EASTERN MAINE ELECTRIC COOPERA-
TIVE, INC. and Citizens for
Maine Power Authority

v.

MAINE YANKEE ATOMIC POWER
COMPANY.

Supreme Judicial Court of Maine.

Jan. 16, 1967.

George J. Mitchell, Portland, Malcolm S. Stevenson, Bangor, Richard B. Sanborn, Augusta, for plaintiff.

Vincent L. McKusick and Gerald M. Amero, Portland, for defendants.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, RUDMAN and DUFRESNE, JJ.

WEBBER, Justice.

Pursuant to 35 M.R.S.A. Sec. 171 Maine Yankee Atomic Power Company filed with the Public Utilities Commission an "Application for Approval of the Issue and Sale of $10 Million of Common Stock." Yankee is a Maine corporation and its corporate purposes are, inter alia, "to make and generate electricity, including electricity generated from nuclear or atomic energy" and to "supply and sell electricity to other electric utilities doing business within or outside of the State of Maine and which are stockholders of the corporation." Yankee was organized on behalf of eleven New England utility companies, three of them located in Maine, which propose to purchase its stock and become the customers for its power. The proposed atomic power plant, if and when built at a location in Maine, is expected to cost between $106,-000,000 and $120,000,000. The initial $10,-000,000 involved in this proceeding is required to defray the expense of planning,

engineering and the securing of regulatory approval from a number of agencies.

Sec. 171 provides in pertinent part: "Any public utility * * * may issue stocks * * * for the acquisition of property to be used for the purpose of carrying out its corporate powers, the construction * * * of its facilities, for the discharge * * * of its obligations * * * or for any other lawful purposes, provided and not otherwise, * * * in the opinion of the commission the sum of the capital to be secured by the issue of said stocks * * * *is required in good faith for purposes enumerated in this section.*" (Emphasis ours.) It is apparent that a stock issue is a matter primarily for managerial judgment and discretion and that the supervisory responsibility of the Commission is discharged when it has satisfied itself that the proposed stock offering is "required in good faith for purposes enumerated in (Sec. 171)." After hearing, the Commission so found in the instant case on the basis of evidence which abundantly supported its decision.

Eastern Maine Electric Cooperative, Inc. and Citizens for Maine Power Authority now seek to appeal from the Commission's decision pursuant to 35 M.R.S.A. Sec. 303. Yankee challenges their standing as appellants. At the public hearing held by order of the Commission, Eastern and Citizens both sought to intervene. After some colloquy and over the objection of Yankee, the Commission granted a qualified or conditional right to intervene and to participate, especially by means of cross-examination, in the manner ordinarily employed by intervening parties.

Rule 16 of the Commission Rules of Practice and Procedure deals with "Intervention" and provides in part:

"Under applicable statutes any person, firm, or corporation; * * * shall have the right to intervene but such intervention shall be considered only under the following conditions:—

"16.1    Leave to Intervene Necessary

"Persons, other than the original parties to the proceeding, *who are directly and substantially affected by the proceeding*, shall file a petition of intervention with the Commission * * *.

"16.2    Form and Contents

"Petitions for leave to intervene must be in writng * * *, making a clear and concise statement of the *direct and substantial interest of the petitioner, in such proceeding*, stating the manner in which such petitioner *will be affected* by such proceeding, * * *." (Emphasis ours.)

This rule was promulgated pursuant to the provisions of 35 M.R.S.A. Sec. 3 and was binding upon the Commission and the parties unless waived. There was no waiver of the requirement that intervening parties be persons who are "directly and substantially affected by the proceeding" and have a "direct and substantial interest" therein, and in fact Yankee opposed intervention precisely upon these grounds. Rule 16 provides a reasonable and in fact a necessary requirement if the Commission is to hear and determine the cases before it promptly and effectively. One who seeks standing as an appellant in the Law Court from a decision of the Commission must satisfy the same requirement. Appeals attempted by parties who demonstrate no such interest must be deemed frivolous.

The record discloses that Eastern is a customer of two of the public utility companies which are potential stockholders of Yankee. Eastern asserted no other interest in the proceeding and took no position on the pending application. Its counsel stated in part: "I want to make it clear that we take no position at the present time on the Maine Yankee project or on the applications pending before the Commission. We neither support nor oppose them now." The same counsel continued by requesting that the Commission "hold in abeyance its consideration and decision on this

matter" pending a study by a special legislative committee then in progress.

With respect to Citizens, their counsel informed the Commission that he represented a "committee" of named individuals which "is now in the process of incorporating." Although the precise interest of these individuals is nowhere specifically stated, it seems fair to conclude that the "committee" is interested in the development in this state of public power developed from atomic energy. It is not suggested that the individuals comprising the "committee" themselves own or contemplate ownership of such a plant but rather that they believe in and support the concept of public ownership and control through a state agency or authority. Such an understanding of their position accords with the statement of their counsel when he expressed their interest in these terms: "I thought I mentioned the basic reasons for intervention. There are two *proposals* for development of nuclear energy in the state. One is *fostered and being sponsored* by the clients that I represent. One is being fostered and sponsored by the clients represented by the counsel on the other side of the board. *I can't think of any other substantial reasons for having an interest in this proposal."* (Emphasis supplied.) In short, the interest of the "committee" is in the creation of a potential but as yet non-existent and problematical competitor of Yankee.

In Nebraska the statute providing right of appeal from decisions of the Commission conferred such right only upon "any * * person or persons affected thereby." The Nebraska court held that this limitation "means any person or persons who either have a substantial right, a property right, or a pecuniary right that would be adversely or injuriously affected, or some right *other than merely a general interest common to all members of the public* that would be adversely or injuriously affected as a result of the order of the commission." (Emphasis ours.) The proceeding was for the approval of the issuance of notes and bonds to retire preferred stock and the attempted appeal

was by a customer of the utility company. The court held that the appellant by alleging itself to be a customer had not thereby alleged any interest in the subject matter and, not being prejudiced by the order of the Commission approving the security issue, had no standing to appeal therefrom. Nebraska Power Co. v. Omaha Ice & Cold Storage, (1946) 147 Neb. 324, 23 N.W.2d 312. Like views have been expressed where customers sought to intervene in securities proceedings by the respective Commissions in Re Laclede Gas Co., 51 P.U.R.3d 321, 325 (Mo.P.S.C.—1963) and Re Upper Peninsula Power Co., 68 P.U.R. (N.S.) 97, 100 (Mich.P.S.C.—1947).

We cannot over-emphasize the fact that *this is not a rate case.* 35 M.R.S.A. Sec. 171 itself carefully makes this distinction when it states: "No order of the commission authorizing *the issue of any stocks * * * shall limit or restrict the powers of the commission *in determining and fixing any rate,* fare, toll, charge, classification, schedule or joint rate * * *."* (Emphasis ours.)

We conclude that Eastern as a customer, not of Yankee, but of two potential stockholders of Yankee, and Citizens as merely advocates of the creation of an entity to compete with Yankee had no standing either to intervene as parties in a stock issue proceeding or to appeal from a decision of the Commission therein. The mere fact that the Commission saw fit either erroneously or as a mere act of grace to vouchsafe status as intervenors to these parties does not establish or ensure their standing as appellants or relieve them from the necessity of demonstrating on appeal that they have a viable interest in these proceedings. These appellants assert no right "other than merely a general interest common to all members of the public." Nebraska Power Co. v. Omaha Ice & Cold Storage, supra. As the Commission properly noted in its decree, "We were acting solely upon a request of management of a utility to issue and sell common stock and the risk, if any there be, falls wholly *upon the stockholders*

*of the utility and not the ratepayer."* (Emphasis ours.)

■ During the course of the proceedings, the suggestion was made, although not in these precise terms, that the Commission had lost jurisdiction to act upon the pending application because the Legislature had created a committee of. its own number to study the "power needs and power structure of the State of Maine" and report its findings and recommendations to the parent body. We touch the jurisdictional issue, not because we deem it raised by this attempted appeal, but only because either the Commission or the court may examine jurisdiction at any stage and upon their own motion. In its decree the Commission stated: "We are aware of the study now being conducted by the Legislative Power Study Committee, so adequately pointed out by the Chairman of that body. We are cognizant also of the aims and goal of the Citizens Committee for Maine Power Authority. The Legislative Power Study Committee, without doubt, will issue its findings and recommendations in the near future. However, assuming that these findings and recommendations coincide with the goals of the Citizens Committee, future legislative action and adoption of certain laws will be required before the possibility of another scheme of providing essential generating facilities exists. Our order as hereinafter set forth is not intended, nor should it in any way impair the Legislative Power Study Committee from providing an independent and impartial study into the matters set forth in the legislative order which created that body." We concur in these conclusions of the Commission.

35 M.R.S.A. Sec. 171 is a general statute. It authorized and in fact required the Commission to act upon an application by a public utility for authorization of an issue of stock and when upon investigation and hearing the Commission was of opinion that the sums thus to be raised were required in good faith for the purposes enumerated in Sec. 171, then to issue the requisite order.

At .its special session in February, 1966, the Legislature passed a resolve which, after appropriate preamble, created a committee with representatives from both Houses "to study the general power requirements of the State of Maine as to generation and transmission, and the possible methods of meeting these requirements, including an analysis of the concept of a Maine Power Authority or other state agency created for the generation and transmission of power, and including an analysis and evaluation of the aforementioned specific proposals for the construction, operation and maintenance of a nuclear power facility; to be given custody of all reports, documents and any other information concerning the subject presently in the files of the appropriate committees, namely, the legislative Leadership Screening Committee, the Allagash St. John Rivers Special Committee; to hold further hearings if deemed necessary; to appoint advisory committees, to engage professional consultant or consultants; to confer when and if deemed appropriate with staff members of the Public Utilities Commission and other state departments, with staff and members of appropriate federal commissions, departments and agencies, and non-governmental research sources, for specific information; and to report the Special Committee findings, conclusions and recommendations to a special session of the 102nd Legislature or to the 103rd Legislature. * * *"

■ It cannot be seriously argued that this legislative order could or even purported to repeal in whole or in part any general statute and Sec. 171 in particular, or that it could or purported to oust the Commission from the jurisdiction conferred by Sec. 171. As long as jurisdictional responsibility remained lodged with the Commission, it had no choice but to discharge its statutory duty.

We conclude that the Commission had jurisdiction to take the action required by

418

Sec. 171 and that Eastern and Citizens are without standing to prosecute these appeals from the decision of the Commission. Accordingly the entry must be

Appeals dismissed.