## STATE BOARD OF EDUCATION

v.

### Kenneth I. COOMBS

and

### State Employees Appeals Board.

Supreme Judicial Court of Maine.

July 31, 1973.

John W. Benoit, Jr., Deputy Atty. Gen., Augusta, for plaintiff.

Pierce, Atwood, Seribner, Allen & McKusick by Ralph I. Lancaster, Jr., Jotham D. Pierce, Portland, Morton A. Brody, Waterville, for defendants.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

ARCHIBALD, Justice.

The State Board of Education (appellant) utilized the provisions of Rule 80B [1] to bring before the Superior Court its contention that the State Employees Appeals Board (Appeals Board) erroneously decided a grievance complaint filed by one Kenneth I. Coombs. The case is before us on appeal from a Superior Court decision favorable to the grievant, the ruling being founded on this statement:

"I hold that the State Employees Appeals Board has the exclusive right to determine this [right or lack of right to terminate an employer-employee relationship] unless the *employee* (not the agency) challenges the decision on either *constitutional* grounds or error on the record. *The State Board of Education has no standing in this court. . . ."* (Emphasis added.)

Our analysis leads us to the conclusion that the ultimate decision reached by the Justice below was correct, albeit on other grounds, and we dismiss the appeal.

Kenneth I. Coombs, being the Assistant Director of the Southern Maine Vocational Technical Institute, was an unclassified state employee. 5 M.R.S.A. § 711(8). His original employment began July 1, 1966, and he signed annual contracts for this position to and including the year ending June 25, 1971, during which time his salary progressed by annual increments from $8,700.00 to $12,768.00. On March 19, 1971, he was notified by the Commissioner of Education that the appellant had voted not to issue a new contract for the ensuing year (1971–72) "because the Board had lost confidence in him."

Coombs, alleging a grievance,[2] submitted the same to the Appeals Board, and the appellant immediately moved to dismiss "for want of jurisdiction" because, since Coombs was being paid on an annual contract which was honored up to its terminal date (June 25, 1971), "there is no dispute or grievance for this Board to settle." This motion was denied.

Subsequently, a full hearing was held resulting in this decision: "This Appeals Board rules that the Board of Education did not have sufficient justification for failing to renew Mr. Coombs' contract. His contract was never terminated." [3]

■ Appellant then instituted the 80B complaint which precipitated the ruling appealed from and gives rise to the first is-

---

1. "(a) Mode of Review. When review by the Superior Court, whether by appeal or otherwise, of any action or failure or *refusal to act by a governmental agency,* including any department, board, commission, or officer, is provided by statute *or is otherwise available by law,* proceedings for such review shall, except as otherwise provided by statute, be governed by these Rules of Civil Procedure as modified by this rule. . . ." (Emphasis added.)

2. The precise grievance is not included in the record. It is apparent, however, that Mr. Coombs claimed tenure although being paid on the basis of annual contracts; the State Board of Education argued that he could have no grievance because, with the termination of the 1970–71 contract, Mr. Coombs would no longer be a state employee, and the grievance did not arise out of the performance of that current contract.

3. Summarized, the Appeals Board found that appellant had adopted policies establishing a two year probationary period and providing "the third appointment shall be considered the beginning of a continuing contract and an indeterminate period of employment." The Appeals Board also found that not only had the appellant failed to establish facts to support its allegations of misconduct but that it had not complied with its own policy rules established for the release of either faculty members or administrative employees. The Appeals Board stated: "The Board of Education had a duty to conform to its own rules and procedures and its employees have a right to rely on such conformity as well as the fact that this Board of Appeals is here to enforce that right and duty."

sue, namely, does the State Board of Education have *standing* under Rule 80B to appeal from the adverse ruling made by the State Employees Appeals Board, both being state agencies within the executive branch of government?

The 1968 Legislature enacted what is now 5 M.R.S.A. §§ 751–753. The first paragraph of § 752 is as follows:

"The board shall have the authority to mediate the final settlement of all grievances and disputes between individual state employees, both classified and unclassified, and their respective state agencies, except in matters of classification and compensation. All complaints between a state employee and the state agency by which he is employed shall be made and heard in the manner provided by this chapter for the mediation and settlement of such complaints. During the procedure for settlement, an employee may be represented at each step by his designated representative. *The decision of the board shall be final and binding upon the state agency and state employees involved* in the dispute, and shall supersede any prior action taken by the state agency with reference to the employment and working conditions of such employees. (Emphasis added.)

Simultaneously with the enactment of 5 M.R.S.A. §§ 751–753, the Legislature amended 5 M.R.S.A. § 678 so that it now reads as follows:

"An appointing authority may dismiss, suspend, or otherwise discipline an employee for cause. *This right is subject to the right of appeal and arbitration of grievances set forth in Sections 751 to 753 . . ..*" (Emphasis added.)

P.L.1968, ch. 539, § 2.

Section 678 originally had authorized the State Personnel Board (5 M.R.S.A. §§ 591, 592) to mediate labor disputes between state employees and the employing agency and had contained no provision which limited either the right of the agency involved or the employee to appeal from its decisions. It was not until 1968 that the "final and binding" clause appeared in the statute by the enactment of Section 752.

It was clearly the legislative purpose to transfer to the Appeals Board the functions previously assigned to the State Personnel Board for dealing with employee grievances. However, unless we interpret the "final and binding" clause of § 752 as being so broad as to preclude all judicial review for whatever reason, this section is likewise silent on the right of appeal.

The first issue addresses itself purely to the question of the *standing* of the appellant to institute the 80B procedure.

The appellant relies upon District Court for District IX v. Williams, 268 A.2d 812 (Me.1970), as authority for its right to utilize Rule 80B as the vehicle to obtain judicial review of the decision of the Appeals Board. Appellant argues that the Court did not question the right of District Court for District IX as an agency of government to raise the issue there decided by proceeding in accordance with Rule 80B. This argument is persuasive. *Williams* raised a serious constitutional question and if the 80B procedure was not available as the vehicle for presenting that issue for judicial review, we are unable to isolate another direct procedural basis for so doing.

As illustrated by ·Carter v. Wilkins, 160 Me. 290, 203 A.2d 682 (1964), Rule 80B was recognized as establishing the procedure under our Civil Rules by which the decision of a state agency acting in a quasi-judicial capacity may be reviewed, thus replacing what was formerly the writ of certiorari.[4]

---

4. *Carter* also established that the State Personnel Board, in acting on a state employee's grievance, does so in a quasi-judicial capacity and it seems self evident that the successor board, namely, the State Employees Appeals Board, acts likewise.

In *Carter* the appellant was a state employee; whereas, here the appellant is a state agency. We may inquire whether an agency of government prior to the adoption of Rule 80B could appropriately petition for a writ of certiorari.

Conceptually, where there is no remedy by appeal, exception or otherwise, the writ of certiorari was used as a means of reviewing "whether the inferior tribunal had jurisdiction of the parties and the subject-matter or whether it exceeded its jurisdiction, or otherwise proceeded in violation of law." Inhabitants of Town of North Berwick v. State Board of Education, 227 A. 2d 462 at 467 (Me.1967); 14 Am.Jur.2d Certiorari § 6 at 782.

Since all governmental agencies must operate within the limits established by the Legislature as well as within the framework of the Maine Constitution, the only effective method to ensure that they do so comply is to allow judicial review, minimally, of jurisdictional and constitutional issues. We can conceive of no sound policy reason that should prohibit one agency of government from being able to test either the constitutional or the jurisdictional limits of another agency of government whose rulings adversely affect that agency.

Precedent is not lacking for the recognition of the right of a legislatively created governmental unit to utilize certiorari as the means of seeking review of the act of another governmental unit. Two early Maine cases are illustrative because in both the applicant for the writ was a municipal-

ity and the defendant in each was a board of county commissioners. Levant v. County Commissioners of Penobscot County, 67 Me. 429 (1877); Nobleboro v. County Commissioners of Lincoln County, 68 Me. 548 (1878). Both of these cases were cited in Carter v. Wilkins, *supra*, thus recognizing their continuing viability. In Inhabitants of Town of North Berwick v. State Board of Education, *supra*, the Plaintiff municipality proceeded under Rule 80B to seek a review of the defendant's ruling with reference to the dissolution of a school administrative district. See also In Re County Commissioners of Aroostook County, 244 A.2d 75 (Me.1968), in which the Court held that the Commissioners were proper parties defendant in the Superior Court in an 80B proceeding where their own ruling was under attack.

We conclude that both legal precedent and sound policy support the right of the appellant to utilize Rule 80B in seeking to review the acts of the Appeals Board.

The next issue relates to the *scope of review* and in this connection we must give consideration to the "final and binding" clause of Section 752.

It is obvious that the Legislature in 1968 endeavored to create a system under which grievances of state employees might be settled expeditiously, inexpensively, and finally. Section 753 spells out the procedure which must be followed prior to bringing the grievance to the Appeals Board.[5]

It is equally clear that the Legislature felt it important to minimize labor disputes

---

5. "§ 753. Procedure for settlement

A grievance or dispute between a state employee and the agency of the State by whom he is employed shall be entertained by the board upon the application of the employee, providing there shall have been compliance with the following requirements;

1. Adjust dispute. That the employee aggrieved by the dispute and the employee or his representative, or both, shall have attempted to adjust the dispute with the employee's immediate supervisor.

2. Grievance in writing. If the employee is dissatisfied with the oral decision of his immediate supervisor, he may pre-

sent the grievance to his supervisor again, this time in written form. The supervisor is then required to make his decision in writing and present it to the employee within 3 working days.

3. Appeal to department head. If the employee is dissatisfied with the supervisor's written decision, he then may appeal, in writing, to the department head. Within 3 working days, the employee shall receive, in writing, the department head's decision.

4. Meeting. If the employee is dissatisfied with the department head's written decision, the department head shall meet with the employee or his representa-

within the governmental framework and, when they did arise, to provide for their speedy resolution.. It saw fit to entrust the Appeals Board with the ultimate judgment on disputes and grievances arising out of the employment practices of the various administrative agencies within the executive branch of government. The composition of the Board itself being made up of three persons "not employed by the State of Maine and who have established background positively indicating a capacity to mediate grievances between management and labor, one of whom shall be an attorney admitted to practice law in this state," is a clear indication of this intent.

■ With this background in mind we construe the "final and binding" clause to mean simply this: If the Appeals Board acts constitutionally and within its own jurisdictional framework and if the grievance alleged falls within those grievances reviewable under the act, the decision reached by the Appeals Board is not subject to judicial review and is conclusive. In other words, if the grievant is a state employee, whether "classified [or] unclassified," within the executive branch of government (as was Coombs) and if the grievance does not relate to "classification [or] compensation," and if there is alleged à compliance with the provisions of Section 753, then the factual decision of the Appeals Board, *whatever it may be,* is not subject to judicial review. *See* n. 3, *supra.*

■ On the record certified to us, it is apparent that the grievance of Mr. Coombs and the decision reached by the Appeals Board fall within this rule. In short, the Appeals Board acted legally on a grievance over which it had jurisdiction. The Justice below was correct when he ordered the appellant's complaint dismissed although incorrect in his general assumption that the appellant "has no standing in this court."

The order is:

Appeal dismissed.

All Justices concurring.

tive, or both, and attempt to adjust the dispute. At least one day prior to such meeting, the employee's representative, if any, shall have access to the work location of the employee involved during the working hours for the purpose of investigating the causes of the grievance.

5. Appeal to Director of Personnel. If the classified employee is dissatisfied with the decision, following a meeting with the department head, he shall appeal to the Director of Personnel who shall, within 6 working days, reply in writing, to the aggrieved employee and the department head involved in his decision, based on the state's personnel law and rules.

6. Submission to board. In the event the grievance shall not have been satisfactorily adjusted within 2 weeks under subsections 1 to 5, the dispute shall be submitted to the board which shall investigate the matters in controversy, shall hear all interested persons who come before it, and make a written decision thereof, which shall be binding on the parties involved. The board's written decision shall be issued within 30 days after the dispute is submitted, unless both parties agree that an extension of this time limit should be allowed.

7. Procedure . . . ."