**In the Matter of the PITTSTON COMPA-
NY OIL REFINERY AND MARINE
TERMINAL AT EASTPORT.**

Supreme Judicial Court of Maine.

July 6, 1977.

Edward F. Bradley, Jr., Asst. Atty. Gen.,
Augusta, for Department of Marine Re-
sources, et al.

Mitchell, Ballou & Keith by Edward H.
Keith, Bangor, for Board of Environmental
Protection.

Sewall & White by Loyall F. Sewall,
Portland, for Pittston Co.

Before DUFRESNE, C. J., and POMER-
OY, WERNICK, ARCHIBALD, DELA-
HANTY and GODFREY, JJ.

DELAHANTY, Justice.

On June 4, 1975 the Board of Environmental Protection (BEP) entered its order granting approval, subject to certain conditions, of the application for development of an oil refinery as proposed by the Pittston Company (Pittston). On July 2, 1975 two timely notices of appeal from that decision were filed, one by the Coastal Resources Action Committee and the other by the appellants: Department of Marine Resources, Department of Inland Fisheries and Wildlife, and Office of Energy Resources.[1] Appellees BEP in a colorable official act and Pittston filed motions to dismiss the appeals of the three appellant agencies on the ground of lack of standing. We grant the motions and dismiss the appeals of the three agencies.

Our discussion necessarily begins with the statute, 38 M.R.S.A. §§ 481 *et seq.,* that gave life to the Site Location of Development Law (Article 6) under which Pittston sought to process its application. The public interest aspect of the article is evident in the judicial review section (38 M.R.S.A. § 487) which provides that *"[a]ny person aggrieved* by any order of the Board . . may . . . appeal therefrom to the Supreme Judicial Court pursuant to the provisions of Rule 73(f) of the Maine Rules of Civil Procedure." (emphasis supplied). The issue before us is limited to one basic question: whether the three state agencies can be considered "any person aggrieved" within the meaning of the statute.

The essence of Pittston's argument as to the construction of the above core portion of § 487 is that, despite the use of the word "person," the Legislature did not intend to expand appeal rights to other than those who were parties to the proceeding below.[2] In support of its position, Pittston points out that although 38 M.R.S.A. § 487 uses the word "person," it also provides that appeals are to be taken pursuant to M.R. C.P. 73(f), which directs that an appeal

from a Site Selection Order "may be taken to the Law Court pursuant to 38 M.R.S.A. § 487 in the same manner as an appeal from a judgment of the Superior Court in a civil action . . . ." Appeals from Superior Court decisions are governed by 14 M.R. S.A. § 1851 which states that "any *party* aggrieved . . . may appeal" (emphasis supplied), as well as by M.R.C.P. 73(a) which states that "a *party* may appeal . . . ." (emphasis supplied). Pittston asserts that 14 M.R.S.A. § 1851 and M.R.C.P. 73(f) act as limitations on the meaning of "person" in § 487, and demonstrate a clear legislative intent that "person" be interpreted as "party."

Pittston's contentions are without merit.

■ We note first that the definitional section of the Site Location of Development Law, 38 M.R.S.A. § 482, defines "person" to include "any municipal or other local government entity, quasi municipal entity, or *state agency.*" (emphasis added). It is apparent that the legislative intent was to include state agencies within "person" as used in Article 6. Furthermore, merely because § 487 incorporates 14 M.R.S.A. § 1851 and M.R.C.P. 73(f), which speak in terms of a *party* appealing, does not necessarily mean that *"person* aggrieved" should be read in § 487 as *"party* aggrieved."

Pittston's reliance on our decision in *Board of County Commissioners v. Maine Central Railroad,* Me., 343 A.2d 877 (1975) is misplaced. That case is not to be interpreted as a pronouncement that one must *always* be a party in order to appeal from administrative decisions; the holding is merely that such is a requirement in appeals from Public Utility Commission (PUC) orders. The section governing PUC appeals, 35 M.R.S.A. § 303, indicates that "[a]n appeal from a final decision of the commission may be taken to the law court . . . in the same manner as an appeal from a judgment of the Superior Court in a

---

1. The appeal of the Coastal Resources Action Committee remains pending and viable. We deal here solely with the purported appeal of the three state agencies.

2. The BEP neither briefed nor argued this issue.

civil action." [3] It is important to note that the PUC appeal provision does not say that "any person aggrieved" may take the appeal. Therein lies the crucial factor which distinguishes a PUC appeal from a Site Selection Order appeal such as the one now under scrutiny.

We believe that the Legislature's use of the word "person" in the Site Location of Development Law is suggestive of an intent that others than those technically parties to the proceeding below should have the right of appeal. *Accord, Eldridge v. Payette-Boise Water Users' Association*, 48 Idaho 182, 279 P. 713 (1929); *State ex rel. Zelden v. Home Realty Investment Co.*, 214 La. 45, 36 So.2d 633 (1948); *In re Switzer*, 201 Mo. 66, 98 S.W. 461 (1906); *see generally*, 3 C.J.S. *Aggrieved* (1973); 4 C.J.S. *Appeal and Error* § 183 (1957). In fact, the three state agencies did participate in the BEP hearings, although the exact capacity in which they appeared is unclear and was an issue briefed and argued by both counsel. In light of our holding that party status is not a prerequisite to appeal under § 487, it is unnecessary for us to resolve that issue.

The next question facing us is whether the three agencies were "aggrieved" within the meaning of § 487. This Court long ago said that "a person is not 'aggrieved' in the statutory sense of that word unless he would be concluded by the decree [or order] from the assertion of some claim of personal or property right." *Sherer v. Sherer*, 93 Me. 210, 213, 44 A. 899, 900 (1899). *See also Blaney v. Rittall*, Me., 312 A.2d 522 (1973); *Jamison v. Shepard*, Me., 270 A.2d 861 (1970). Aggrievance for an agency, as opposed to an individual, has been defined in a somewhat different manner. It has been said that

impairment of an administrative agency's interest in the effective discharge of the obligations imposed upon the agency by

law is the equivalent of the 'personal stake,' 'injury in fact,' or 'concrete injury' that would support standing of a private plaintiff.

*Washington Utilities & Transportation Commission v. F. C. C.*, 513 F.2d 1142, 1149 (9th Cir. 1975) *citing Coleman v. Miller*, 307 U.S. 433, 59 S.Ct. 972, 83 L.Ed. 1385 (1939). *See also United States ex rel. Chapman v. Federal Power Commission*, 345 U.S. 153, 73 S.Ct. 609, 97 L.Ed. 918 (1953); *Department of Public Works v. United States*, 55 F.2d 392 (W.D.Wash.1932). In other words, for an agency to show that it is aggrieved by an order or action, "the complaining agency must at least show it has some *special interest* from which it is charged with responsibility that may be adversely affected by the action attacked." *Camp v. Board of Public Works*, 238 S.C. 461, 469, 120 S.E.2d 681, 685 (1961) (emphasis added).

It is clear that in Maine there are some situations wherein an agency does possess the requisite special interest and therefore can appeal or challenge the action of another agency. We noted in *State Board of Education v. Coombs*, Me., 308 A.2d 582, 585 (1973) that

[w]e can conceive of no sound policy reason that should prohibit one agency of government from being able to test either the constitutional or the jurisdictional limits of another agency of government whose rulings adversely affect that agency.

In that case, the State Board of Education's decision to discharge an employee was reversed by the Appeals Board. We held that the Board of Education had standing to appeal the ruling. That it was the Board of Education's *own* action which was reversed by another administrative agency is a fact of vital significance. In the instant case, on the contrary, there is no action, project or application, *i. e.* special interest, of the three state agencies which was acted upon by the BEP; it was Pittston, not the agen-

3. *We note that, subsequent to our decision in Maine Central, supra,* the Legislature amended 35 M.R.S.A. § 303 and added the following sentence: "Any person, who has opposed and participated in opposition to applications, petitions or commission proceedings upon which a public hearing was held and who is adversely affected by the final decision of the commission, is deemed a party for purposes of taking an appeal from such decision."

cies, who submitted the proposed plan. Appellants' reliance on *Coombs* is therefore inappropriate.

The situation involved in the instant case is not unlike that which faced us in *Nichols v. City of Rockland,* Me., 324 A.2d 295 (1974). *Nichols* involved the enactment of a municipal ordinance which had the general effect of imposing a ten p. m. curfew on probationers and parolees. The Parole Board attempted to challenge the ordinance, basing its assertion of standing on the fact that the ordinance interfered with its own supervision of the parole and probation system. In other words, the Board claimed that it was aggrieved in that it was impaired in the effective discharge of obligations imposed upon it by statute. We said:

> We feel that the thrust of the ordinance toward the Board's effectiveness is *not only light but abstract as well.* The mere fact that the Board is displeased with what it considers to be an adverse effect of the ordinance upon the rehabilitation process of its parolees and probationers does not give the members of the Board a personal interest which is entitled to legal protection. *Nichols, supra* at 297. (emphasis added).

We distinguished *Coombs,* noting that there the Board of Education had a "legitimate legal interest" whereas the Parole Board in *Nichols* had "no personal, definite, legal right at stake." *Nichols, supra* at 298.

In the instant case there is a similar lack of a definite and direct special interest entitled to legal protection. We recognize that, among other duties, the Office of Energy Resources has a general responsibility to plan and develop energy resources, 5 M.R.S.A. § 5003; that The Department of Inland Fisheries and Wildlife is obligated to enforce laws protecting Maine's fish and wildlife, 12 M.R.S.A. § 1952; and that the Department of Marine Resources is obligated to conserve and develop Maine's marine and estuarine resources, 12 M.R.S.A. § 3451. Furthermore, the hearing transcripts contained in the record indicate that questions

have been raised concerning the possible effects of the Pittston oil refinery on energy resources, fish, wildlife, and marine resources. But whether in fact there would be any effect at all is pure speculation and clearly not the kind of *direct* impairment of the conduct and duties of an agency which is required to show aggrievedness. We said in *Eastern Maine Electric Cooperative, Inc. v. Maine Yankee Atomic Power Co.,* Me., 225 A.2d 414, 416 (1967):

> The mere fact that the Commission saw fit either erroneously or as a mere act of grace to vouchsafe status as intervenors to these parties does not establish or ensure their standing as appellants or relieve them from *the necessity of demonstrating on appeal that they have a viable interest in these proceedings.* (emphasis added).

Such a viable interest was *not* demonstrated by appellants. Any interest of the three agencies here is indirect, speculative, light and abstract; we accordingly conclude that the agencies lack standing to bring this appeal.

■ In deciding whether to allow one agency to challenge the decision of another agency, consideration should be given to "the pertinent statutory provisions, the relationship which the agencies bear to each other, and the nature of the controversy out of which the administrative decision arises." *Department of Registration and Education v. Aman,* 53 Ill.2d 522, 525, 292 N.E.2d 897, 898 (1973). In examining these factors, we find our holding congruous with the overall legislative intent, as we perceive it, regarding the function and role of various state agencies in relation to the BEP, specifically as concerns the Site Location of Development Law. Indicative of the legislative mood is the Statement of Findings and Purpose of Article 6 (38 M.R.S.A. § 481) wherein it is declared:

> The purpose of this subchapter is to provide a flexible and practical means by which the State, acting through the Environmental Improvement Commission,[4] *in*

4. The Environmental Improvement Commission was renamed the Board of Environmental

Protection by P.L.1972, 1st Spec.Sess., ch. 618, § 12.

*consultation with appropriate state agencies,* may exercise the police power of the State to control the location of those developments substantially affecting local environment . . .. (emphasis added).

A further clue as to what the Legislature envisioned as the ideal relationship of various state agencies to the BEP is contained in the section dealing with the duties of the Commissioner of Marine Resources. 12 M.R.S.A. § 3502–B provides that the Commissioner

> [s]hall at all times *consult with, advise and cooperate* with . . . the Department of Environmental Protection . . .. Cooperation shall include, but not be limited to, the exchange of information and the filing of copies of any applications, petitions, requests, reports or other similar documents . . .. The heads of each department are directed . . . to provide an opportunity for any of the departments to respond, formally or informally, *before final decisions* are rendered on matters of applications, petitions, requests or other similar requests. If any department has received from the Department of Marine Resources comments in writing *before a final decision* is rendered on the matter of an application, petition, request or other similar matter, it shall consider those comments in its final decision and they shall be made a part of the record. (emphasis added).

In fact, all three agencies played an active part in the hearings below and the BEP received the benefit of their opinions and advice. However, the entire statutory scheme suggests that the agency participation is to terminate when the BEP renders its final order. Accordingly our holding, which denies appeal rights to the three agencies, does not frustrate but on the contrary serves to advance the ascertainable goals and purposes which the lawmakers sought to achieve through enactment of the Site Location of Development Law.

The entry will be

Appeal dismissed.

DUFRESNE, C. J., and POMEROY, WERNICK and ARCHIBALD, JJ., concurring.

GODFREY, J., concurring in result.

GODFREY, Justice, concurring in result.

I concur in the result on the second ground given by the court for its decision; namely, that the statutes under consideration manifest a purpose of making the Board of Environmental Protection the final arbiter as among state agencies of issues pertaining to site location. Since the legislation assigns a consultative role to the agencies, their participation, other than as possible consultants, should end when the Board renders its final order.