STATE OF MAINE                              SUPERIOR COURT
KENNEBEC, ss                                CIVIL ACTION
                                            DOCKET NO. AP-18-58

HOLLY BERNSTEIN

            Petitioner,

                                            **ORDER DENYING PETITION FOR 80C**
v.                                          **RELIEF**

MAINE DEPARTMENT OF
ADMINISTRATIVE AND
FINANCIAL SERVICES

            Respondent.

Before the court is Petitioner Holly Bernstein's 80C petition for review of final agency action. In her appeal, Bernstein seeks relief from two disciplinary actions which were upheld by the Maine Civil Service Board on August 1, 2018. The first, known as the "FJA issue," involves discipline Bernstein was subject to in response to her having prepared a Functional Job Analysis for a fellow employee. The second, known as the "turn around issue," involves discipline Bernstein was subject to in response for her telling a new employee to "turn around."

Petitioner is represented by Attorney Stanley Tupper and Respondent Maine Department of Administrative and Financial Services ("DAFS" or "the Department") is represented by Assistant Attorney General Kelly Morrell. Oral argument was held on August 6, 2019. For the following reasons Bernstein's petition for 80C relief is denied.

## Background

Bernstein works for the DAFS as a Principal HR Analyst. (R. 218.) Bernstein's duties include representing the Department and defending its Functional Job Analysis ("FJA") decisions.[1]

---

[1] FJA's are documents used for determining whether State government positions are classified at the appropriate pay grade. (R. 125-26.) The document contains a detailed description about the position's duties and what skills, knowledge and abilities are required to perform the job. (R. 125-26.) State employees may submit FJA's to the

(R. 129.) On July 21, 2017, the Department received a memorandum from Kendra Coates, the Director of the DAFS General Government Service Center, alleging that Bernstein prepared an FJA for a friend and that this was inappropriate and constituted a conflict of interest. (R. 318.) After receiving the complaint, the Department conducted an investigation. (R. 321.)

During the course of the investigation Bernstein was interviewed and admitted to preparing an FJA for her friend. (R. 128, 322.) Bernstein was represented by an attorney during the interview. (R. 127-28.) Bernstein also had an opportunity to meet with the Deputy Commissioner of Operations and present her side of the story prior to the imposition of any discipline. (R. 326, 328) At this meeting, Bernstein admitted her conduct was wrong. (R. 160, 328.) Bernstein was not represented by an attorney at her meeting with the Deputy Commissioner but agreed to proceed despite this. (R. 158.) Ultimately, the Deputy Commissioner disciplined Bernstein with a five-day unpaid suspension. (R. 160, 328.) Bernstein was also removed from the Governor's FJA initiative. (R. 160-161, 328.)

On November 2, 2017, a new employee was being introduced to Bernstein and her co-worker Thaddeus Cotnoir. (R. 73.) During the introduction, Bernstein asked the new employee to turn around. (R. 74, 84, 261.) Although he appeared uncomfortable, the new employee started to turn around. (R. 84, 351.) Bernstein then looked down at the employee's buttocks, chuckled and said, "yeah you look just like [a former state employee]." (R. 84, 351.) Cotnoir subsequently reported this incident to Human Resources. (R. 84-85.) The Department then initiated an investigation into Bernstein's conduct. (R. 108-09, 350.)

---

Department if they do not believe they have been properly classified and would like to obtain an increase in their pay range. (R. 126, 129.) Employee's may appeal the Department's decision not to increase the employee's pay range (R. 129, 148.)

Bernstein was interviewed during the investigation and admitted to asking the new employee to turn around, although she claimed it was because she wanted to see the back of his head. (R. 109-10, 261, 350, 352.) Bernstein was represented by counsel during the interview. (R. 109, 185.) Bernstein and her attorney also met with the Deputy Commissioner of Finance and the Acting Director of Human Resources. (R. 185, 204, 357.) Bernstein ultimately received a written reprimand. (R. 357-58.)

Bernstein subsequently appealed both of the disciplinary actions. The Civil Service Appeals Board held an evidentiary hearing on July 13, 2018. (R. 55.) At the hearing Bernstein was represented by counsel and had an opportunity to examine witnesses and present evidence. (R. 312-314.) At the close of testimony, the Board admitted two exhibits, the written complaint of Kendra Coates and the investigation report of Laurel Shippee, into evidence over Bernstein's objection. (R. 289-90.) After the close of evidence, the Board publicly deliberated. (R. 238.) The Board subsequently issued a written decision finding that the Department had just cause to Discipline Bernstein. (R. 55-62.) Bernstein then appealed the Board's decision to this court.

### Standard of Review

As a general rule, the factual decisions of the Civil Service Appeals Board are "final and binding" and therefore not subject to judicial review. 5. M.R.S. § 7082(4); *State Bd. of Education v. Coombs*, 308 A.2d 582, 585 (Me. 1973). However, because "all governmental agencies must operate within the limits established by the Legislature as well as within the framework of the Maine Constitution," judicial review may be taken of jurisdictional and constitutional issues. *Coombs*, 308 A.2d at 585. Consequently, a decision of the Civil Service Appeals Board is conclusive and may not be overturned so long as the Board has acted constitutionally in regard to subject matter within its jurisdiction. *Id.* at 586. As the party seeking to vacate the Board's decision,

3

Bernstein bears the burden of persuasion. *See Kelley v. Me. Pub. Emps. Ret. Sys.*, 2009 ME 27, ¶ 16, 967 A.2d 676.

**Discussion**

Bernstein first argues that the Board deprived her of due process by failing to apply the relevant "for cause" or "just cause" legal standard. Specifically, Bernstein argues that the Board failed to apply the "Seven Tests of Just Cause," also known as the "Daugherty Test."

Bernstein supports her argument by citing to numerous labor arbitration decisions which have applied what is referred to as "the seven tests of just cause," or as "the Daugherty test." This court, however, is not aware of any authority which stands for the tenant that Due Process requires a public employer to utilize Bernstein's proposed test for just cause prior to taking any adverse employment action against an employee. *See e.g. Summit County Children Servs. Bd. v. Commun. Workers, Local456*, 865 N.E.2d 31, 36 (Oh. 2007) (holding that an arbitrator's use of the Daugherty test was proper but not required). Consequently, the court does not believe that Bernstein was denied a fair hearing simply because the Board did not use the Daugherty test for just cause.

Bernstein next argues that she was deprived of a fair hearing because she was prevented from confronting and cross-examining two witnesses, Kendra Coats and Ian Swanberg. Bernstein similarly argues that, because Coates was not available to testify, the Board should not have admitted Coates written complaint and statements into evidence.

The Law Court has indicated that the right to introduce evidence and to present witnesses is required by due process in proceedings to terminate public employment. *Barber v. Fairfield*, 460 A.2d 1001, 1006 (Me. 1983). In *Barber*, the Court held that the Town of Fairfield had violated its police chief's due process rights when it failed to either postpone the chief's termination hearing

4

or postpone issuing a final decision regarding the chief's termination until after the chief was able to present testimony from a witness critical to his defense. *Id.*

In this case, the record shows that Bernstein objected to the admission of Coates's complaint and statements due to Bernstein's inability to cross examine Coates. (R. 289-90.) Unlike in the *Barber* case, the Board did offer to schedule another hearing to allow Bernstein to examine Coates. (R. 295.) Bernstein, however, rejected this offer and took the position that another hearing would not be necessary. (R. 295.) Because Bernstein was given an opportunity to examine Coates prior to the Board's issuance of a final decision, the court concludes that the Board did not violate Bernstein's due process rights by preventing her from cross-examining Coates. For similar reasons, the Board did not violate Bernstein's rights by admitting Coates's complaint and statements.

In regard to Ian Swanberg, there is no evidence before the court which suggests that he is a critical witness who would have testified favorably for Bernstein. Bernstein's objection to proceeding with a hearing despite Swanberg's unavailability was premised on Swanberg's status as "an accuser and key adverse witness." (R. 46.) Swanberg however, was neither an accuser nor a key witness. Two witnesses, Thaddeus Cotnoir and Joyce Oreskovich, testified at the Board hearing about the "turn around" incident involving Swanberg. These witnesses both confirmed that Bernstein asked Swanberg to turn around and both were subject to cross examination by Bernstein. (R. 73-74, 77, 83, 92.) Cotnoir also testified that he was the one who reported the Swanberg incident to HR. (R. 84-85.) Further, Bernstein herself testified about the "turn around" incident and admits to having asked Swanberg to turn around (R. 261, 278.) Based on the foregoing, the court concludes that the Board did not deprive Bernstein of due process when it refused to reschedule the hearing to allow Swanberg to testify.

5

## Conclusion

Bernstein does not argue that the Board acted outside its jurisdiction in this case. For the above reasons, the court concludes that the Board acted constitutionally in its consideration of Bernstein's two appeals.

**The entry is**

> **Petitioner Holly Bernstein's 80C Petition for Review of Final Agency Action is DENIED. The Decision of the Maine Civil Appeals Board is AFFIRMED.**

**The clerk is directed to incorporate this order into the docket by reference. M.R. Civ. P. 79(a).**

Date:___10/15/19___

_____
Justice, Superior Court

6