SUMMIT COUNTY CHILDREN SERVICES BOARD, APPELLEE, *v.* COMMUNICATION WORKERS OF AMERICA, LOCAL 4546, APPELLANT.

[Cite as *Summit Cty. Children Servs. Bd. v. Communication Workers of Am., Local 4546*, 113 Ohio St.3d 291, 2007-Ohio-1949.]

(No. 2006–0567—Submitted February 28, 2007—Decided May 9, 2007.)

O'CONNOR, J.

{¶ 1} In this case, we address whether in the absence of a definition of "good cause" in a collective-bargaining agreement, an arbitrator may use a test for good cause that considers an employee's record of service and other mitigating circumstances. We hold that an arbitrator may do so.

## RELEVANT BACKGROUND

{¶ 2} Appellant, Communication Workers of America, Local No. 4546, entered into a collective-bargaining agreement ("CBA") with appellee, Summit County Children Services Board, that governed many aspects of the workplace, including employee discipline.

{¶ 3} Pursuant to the CBA, "good cause" was a prerequisite for disciplinary action against an employee. For example, Section 404.01 states, "No employee shall be reduced in pay or position, suspended or discharged, except for good cause, nor shall the Employer take any form of corrective action against any employee except for good cause." Similarly, another provision, Section 404.03, states, "The Employer shall administer all corrective actions in a progressive manner. Corrective actions must be based on good cause, be uniformly applied, and be consistent with the Employer's Table of Discipline governing such actions, except that the Employer may apply a lesser penalty from the recommended standard penalties."

{¶ 4} The CBA required that progressive discipline be used upon a finding of good cause. The CBA also contained a grievance process for employee complaints about disciplinary actions, and the grievance process required the parties to submit to final and binding arbitration.

{¶ 5} The CBA applied to a children services board employee, Renee Scott. Scott worked as a receptionist at the agency, a critical role, given that the agency serves abused, neglected, and dependent children. Scott worked during evenings and on weekends.

{¶ 6} The children services board investigated Scott for alleged violations of the agency's rules, including those that forbade employees to leave the premises without permission during scheduled work hours and to falsify time cards and personnel records. A neutral administrator heard the complaint against Scott and concluded that she had violated the agency's rules as had been alleged. The administrator recommended that Scott be disciplined with a seven-day suspension from work without pay. The children services board, however, terminated Scott for the violation.

{¶ 7} Scott filed a grievance in response to her termination. In accordance with the CBA and with the parties' assent, the case proceeded to binding arbitration. The issue to be determined in arbitration was framed by the arbitrator as "Did the Employer violate the collective bargaining agreement * * * when it discharged the Grievant, and if so, what should be the remedy?" In light of the provisions of the CBA noted above, the issue in arbitration necessarily turned on whether there was "good cause" for Scott's termination.

{¶ 8} The arbitrator's ruling upheld Scott's grievance in part, finding that Scott could not be punished for violating the rules against leaving the workplace during working hours and those forbidding the falsification of personnel records, because the rules had lapsed by nonenforcement or had not been clearly communicated to her. The arbitrator did find, however, that Scott had admitted to falsifying time cards by claiming that she was at work at times when she was not. The arbitrator further found that Scott did not challenge the validity of that rule or suggest that she had not been given notice of the rule, and that there was no evidence that the children services board had acted unfairly during the investigation or that it had treated Scott differently than other employees who falsified their time cards. Nevertheless, the arbitrator concluded that the violation of the time card rule did not constitute good cause for termination.

{¶ 9} In reaching the conclusion that there was not good cause for termination, the arbitrator used the seven tests for just cause used by Carroll Daugherty in *Ent. Wire Co.* (1966), 46 Lab. Arb. Rep. 359 ("the Daugherty test").[1] See *Am.*

---

1. Courts and commentators also cite various other cases as sources for the Daugherty test, including *Grief Bros. Cooperage Corp.* (1964), 42 Lab. Arb. Rep. 555, and *Whirlpool Corp.* (1972), 58 Lab. Arb. Rep. 421. Whatever its exact origins, and regardless of whether the concept is labeled "good cause," "just cause," or "proper cause," there is no dispute that the seven tests were established and refined by Daugherty and that they have been used routinely for over 30 years. See, e.g., Adolph M. Koven and Susan L. Smith, Just Cause: The Seven Tests (2d Ed. Farwell

*Fed. of State, Cty. & Mun. Emps., Dist. Council 88, AFL–CIO v. Reading* (1990), 130 Pa.Cmwlth. 575, 582, 568 A.2d 1352, fn. 2 (describing Daugherty as "the highly respected arbitrator" and noting that he received the American Arbitration Association's Lifetime Achievement Award in 1986 for the development of the seven tests for good cause). According to the Daugherty test, a negative answer to any of the seven inquiries within the test signifies that good cause is not present. *Id.* Here, the arbitrator found that the seventh inquiry, which asks whether the degree of discipline imposed was reasonably related to the seriousness of the employee's proven offense in light of the employee's record of service and other mitigating factors, was not satisfied and, therefore, that there was not good cause for Scott's termination. Accordingly, the arbitrator sustained Scott's grievance in part, finding that Scott could be punished only for violating the time card rule, and that the discipline for that offense should be a seven-day suspension without pay rather than termination.

{¶ 10} The children services board disagreed. Alleging that the arbitrator had exceeded his authority by using the Daugherty test for good cause, the board filed a complaint and application to vacate, modify, or correct the arbitration award in the common pleas court. See R.C. 2711.10 (a court of common pleas "shall make an order vacating the award upon the application of any party to the arbitration if * * * (D) [t]he arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made"). The common pleas court agreed and vacated the arbitrator's award.

{¶ 11} The union appealed. See R.C. 2711.15 ("An appeal may be taken from an order confirming, modifying, correcting, or vacating an award made in an arbitration proceeding or from judgment entered upon an award"). The court of appeals rejected the union's arguments, holding that the arbitrator had exceeded his authority by using the Daugherty test.

---

Rev.1992) 1–2 and fns. 1, 24–25 and fns. 59 and 60, and cases and sources cited therein. The seven tests, presented as questions, are as follows: "1. Did the company give to the employee forewarning or foreknowledge of the possible or probabl[e] disciplinary consequences of the employee's conduct?" "2. Was the company's rule or managerial order reasonably related to (a) the orderly, efficient, and safe operation of the company's business and (b) the performance that the company might properly expect of the employee?" "3. Did the company, before administering discipline to an employee, make an effort to discover whether the employee did in fact violate or disobey a rule or order of management?" "4. Was the company's investigation conducted fairly and objectively?" "5. At the investigation did the 'judge' obtain substantial evidence or proof that the employee was guilty as charged?" "6. Has the company applied its rules, orders, and penalties evenhandedly and without discrimination to all employees?" "7. Was the degree of discipline administered by the company in a particular case reasonably related to (a) the seriousness of the employee's proven offense and (b) the record of the employee in his service with the company?" *Ent. Wire Co.*, 46 Lab. Arb. Rep. at 363–364.

{¶ 12} We asserted discretionary jurisdiction over the appeal to address the following proposition of law: "In the absence of language in a collective bargaining agreement restricting an arbitrator's determination of good cause to discipline an employee, and where the agreement requires the employer to administer all corrective action in a progressive manner, an arbitrator is authorized to consider an employee's record of service or other mitigating circumstances relating to the appropriateness of the discipline imposed."[2] *Summit Cty. Children Servs. Bd. v. Communication Workers of Am., Local No. 4546*, 109 Ohio St.3d 1505, 2006-Ohio-2998, 849 N.E.2d 1027.

### ANALYSIS

{¶ 13} "[A] CBA is limited to the provisions bargained for and * * * an arbitrator may not apply extraneous rules to the agreement, where those rules were not bargained for and are contrary to the plain terms of the agreement itself." *Internatl. Assn. of Firefighters, Local 67 v. Columbus* (2002), 95 Ohio St.3d 101, 104, 766 N.E.2d 139. Because a valid arbitrator's award draws its essence from a CBA, *Mahoning Cty. Bd. of Mental Retardation & Developmental Disabilities v. Mahoning Cty. TMR Edn. Assn.* (1986), 22 Ohio St.3d 80, 84, 22 OBR 95, 488 N.E.2d 872, an arbitrator exceeds his powers when the award conflicts with the express terms of the agreement or cannot be derived rationally from the terms of the agreement. *Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Emps. Assn., Local 11, AFSCME, AFL–CIO* (1991), 59 Ohio St.3d 177, 572 N.E.2d 71, at syllabus.

{¶ 14} In concluding that the arbitrator's award in this case must be vacated, the court of appeals relied on our decision in *Internatl. Assn. of Firefighters, Local 67*. There, we found that the arbitrator had improperly defined a term not expressly defined in the CBA, "disability," by using a definition that was used by the employer but which did not comport with the ordinary definition, for which we consulted Black's Law Dictionary (7th Ed.1999). 95 Ohio St.3d at 102–103, 766 N.E.2d 139. Rejecting that approach, we held that "[a]n arbitrator is confined to interpreting the provisions of a CBA as written and to construe the terms used in the agreement according to their plain and ordinary meaning." Id. at 103, 766 N.E.2d 139, citing *Ohio Office of Collective Bargaining*, 59 Ohio St.3d at 180, 572 N.E.2d 71. In those particular circumstances, we concluded that the arbitrator's decision had exceeded his powers.

{¶ 15} Here, the CBA at issue did not define "good cause," and accordingly the arbitrator was required to give that term its plain and ordinary meaning. But by focusing myopically on our use of Black's Law Dictionary in *Internatl. Assn. of*

---

2. The union also presents a second proposition of law, which asserts an estoppel principle. Because of our resolution of the first proposition of law, it is not necessary to reach the estoppel proposition.

*Firefighters, Local 67,* the court of appeals in this case erroneously found that the arbitrator was constrained to use the ordinary definition of "good cause," as in Black's Law Dictionary, without considering the context of this case, similar claims that had been arbitrated, and our prior decisions. Significantly, the trial court and the court of appeals failed to recognize that the Daugherty test is part of the plain and ordinary meaning of "good cause" in labor arbitrations. The federal district court's decision in *Conoco, Inc. v. Oil, Chem. & Atomic Workers Internatl. Union* (N.D.Okla.1998), 26 F.Supp.2d 1310, illustrates this point.

{¶ 16} There, like here, "[t]he sole issue presented for arbitration was: 'Did the Company discharge the grievant for just cause and, if not, what shall the remedy be?'" Id. at 1313. And, like the term "good cause" here, the term "just cause" was not defined in the CBA, so the arbitrator therefore had to define the term. Id. In so doing, he stated, "'Just cause is a term which has received considerable attention from both arbitrators and the judiciary. However, perhaps the single most important decision handed down on the question of just cause was the 1972 *Whirlpool Corp.* decision by Arbitrator Carroll Daugherty.' See *Whirlpool Corp. v. Internatl. Union of Elec., Radio, & Mach. Workers Local 808,* 58 Lab. Arb. (BNA) 421 (1972) (Daugherty, Arb.)." Id. at 1313–1314. The arbitrator in *Conoco* explained that he used the Daugherty test because it "'has been subscribed to by many arbitrators since 1972'" and that he had long believed that the Daugherty test "'is objective and appropriate in almost every just cause discharge matter.'" Id., 26 F.Supp.2d at 1314.

{¶ 17} In addressing the employer's principal argument, "that the arbitrator abused and exceeded his authority" by using the Daugherty test to determine whether the employee had been discharged for good cause, the court in *Conoco* held that the arbitrator was not limited to the provisions in the CBA but, rather, could look to "'"the industrial common law—the practices of the industry and the shop."'" 26 F.Supp.2d at 1316–1317, quoting *Manville Forest Prods. Corp. v. United Paperworkers Internatl. Union, AFL–CIO,* 831 F.2d 72, 75 (C.A.5, 1987), quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.* (1960), 363 U.S. 574, 579, 80 S.Ct. 1347, 4 L.Ed.2d 1409. For reasons equally applicable here, the court then found that the arbitrator had not exceeded his authority in using Daugherty's test: "[Because] the test was developed in 1972 and has apparently been widely used and relied upon since that time, the parties should have known in 1996 when they entered into the CBA that such a test might be used to interpret a phrase left undefined by the agreement. Thus, the arbitrator, in looking to [the Daugherty test for good cause], properly resorted to industrial common law for guidance in interpreting an undefined phrase. Indeed, had the arbitrator formulated a test of his own making, Conoco may have had an argument that the arbitrator attempted to dispense his own brand of industrial

justice. Rather than doing so, however, the arbitrator employed a well-known and widely used test * * *." Id. at 1317.

{¶ 18} Given that the definition of "good cause" can be nebulous and elusive, a consistent framework for determining good cause is critical. Although the Daugherty test has sustained some criticisms over the years, it nevertheless remains viable and presents a helpful and familiar rubric by which an arbitrator can assess whether good cause for discipline exists in a particular circumstance. The definition of "good cause" found in Black's Law Dictionary—"[a] legally sufficient reason," (8th Ed.2004) 235—is comparatively of little assistance to the arbitrator, employer, or employee in determining whether good cause is present.

{¶ 19} Although we hold that the arbitrator's use of the Daugherty test in this case was proper, we do not suggest that it is the only proper definition or that parties to a CBA are required to use the Daugherty test. But as the court in *Conoco* observed in rejecting the employer's argument that it had not agreed to the test, if the parties do not expressly prohibit its use in the CBA and if they leave the term "just cause" undefined, they risk the arbitrator's looking "outside the CBA for guidance in defining, interpreting, and applying that phrase." 26 F.Supp.2d at 1317–1318. Indeed, the children services board knew that the term "good cause" was undefined in the CBA and that the arbitrator would have to give meaning to that critical term. Given the common usage of the Daugherty test over the past 40 years, the children services board could not have been surprised by the arbitrator's use of the test. In fact, the arbitrator's opinion expressly states that during the arbitration, the children services board cited Discipline and Discharge in Arbitration (Norman Brand Ed.1998) as authority for some of its arguments on the severity of Scott's misconduct. That treatise expressly refers to Daugherty's test. Id. at 31–33. We thus agree with the union that the arbitrator's use of the Daugherty test for good cause did not exceed his authority.

{¶ 20} Further, we find that the arbitrator was authorized to consider Scott's record of service or other mitigating circumstances relating to the appropriateness of the discipline imposed. Although the CBA expressly stated only that the board was to "administer all corrective actions in a progressive manner," it did not forbid the arbitrator's consideration of mitigating factors in imposing discipline for a violation. The seventh test in Daugherty's test directly incorporated the questions of reasonableness and mitigation of discipline into the analysis of good cause. Therefore, the arbitrator properly considered mitigating factors.

{¶ 21} Moreover, we have held, "When an arbitrator's decision draws its essence from the collective bargaining agreement, and in the absence of language in the agreement that would restrict such review, the arbitrator, after determining that there was just cause to discipline an employee, has the authority to

review the appropriateness of the type of discipline imposed." *Miami Twp. Bd. of Trustees v. Fraternal Order of Police, Ohio Labor Council, Inc.* (1998), 81 Ohio St.3d 269, 690 N.E.2d 1262, syllabus. Indeed, an arbitrator's inquiry into whether there is "good cause" is one that almost always involves two factors— whether the misconduct alleged has been proven and whether the discipline imposed for the misconduct was reasonable. Id. at 272, 690 N.E.2d 1262.

{¶ 22} In light of the foregoing analysis and conclusions, the judgments of the trial court and court of appeals are reversed, and the arbitrator's award is reinstated.

Judgment accordingly.

MOYER, C.J., PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER and CUPP, JJ., concur.

---

Hanna, Campbell & Powell, L.L.P., Douglas N. Godshall, and Robert L. Tucker, for appellee.

Gorman, Malarcik, Pierce & Vuillemin and Lawrence M. Vuillemin, for appellant.

Livorno & Arnett Co., L.P.A., and Henry A. Arnett, urging reversal for amicus curiae Ohio Association of Professional Fire Fighters.

Paul L. Cox, urging reversal for amicus curiae Fraternal Order of Police of Ohio, Inc.