COBB, Chief Justice
(dissenting).
I respectfully dissent. In this case the hearing officer, a former school-board president who was jointly selected by all the parties, determined that “all of the charges levied against Laura Wilson grow out of her actions, not as a physical education teacher but as the school’s cheer-leading coach, an extra-curricular compensated position.” The hearing officer conducted a thorough hearing and made detailed findings concerning the charges. After addressing the charges point by point and noting that “Ms. Wilson was not being secretive and that her building principal knew what was going on and gave continual tacit approval,” the hearing officer concluded that although the Morgan County Board of Education (“the Board”) had the authority to terminate Wilson’s employment as the coach of the cheerleading squad at Buckhorn High School, it did not have just cause to terminate her employment as a teacher. I believe that a proper reading and application of the law to this case requires this Court to reverse the Court of Civil Appeals’ decision and remand the case for that court to affirm the hearing officer’s determination.
The hearing officer’s authority in this regard is set out in Ala.Code 1975, § 16-24-10(a):
*1174 “The hearing officer shall conduct a de novo hearing and shall render a decision based on the evidence and/or information submitted to the hearing officer. The hearing officer shall determine which of the following actions should be taken relative to the employee: Cancellation of the employment contract, a suspension of the employee, with or without pay, a reprimand, other disciplinary action, or no action against the employee.”
(Emphasis added.) The appellate review of the hearing officer’s determination in this case is controlled by Ala.Code 1975, § 16-24-10(b), which states, in pertinent part:
“The decision of the hearing officer shall be affirmed on appeal unless the Court of Civil Appeals finds the decision arbitrary and capricious, in which case the court may order that the parties conduct another hearing consistent with the procedures of this article.”
(Emphasis added.) Of particular note in our review is the fact that the only standard to be applied is whether the hearing officer’s determination is arbitrary and capricious. That is, unlike many other legislative enactments that prescribe additional bases upon which a decision of an agency or hearing officer may be reviewed,[6] the statute that controls our review in this ease permits no other standard. Because we accord the legal conclusions of the Court of Civil Appeals no presumption of correctness in our certiorari review, Ex parte Wade, 957 So.2d 477 (Ala.2006), this Court’s review of the opinion of the Court of Civil Appeals must consider only whether the hearing officer’s determination was arbitrary and capricious.
*1175 The term “arbitrary and capricious” has been defined by the United States Supreme Court in the context of the appellate review of the actions of an agency, or, in this case, of a hearing officer, as follows:
“[A]n agency rule would be arbitrary or capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.”
Motor Vehicle Mfrs. Ass’n of the United, States, Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). See also Sierra Club, Inc. v. Leavitt, 488 F.3d 904 (11th Cir.2007); and Titan Tire of Natchez, Inc. v. Mississippi Comm’n on Envtl. Quality, 891 So.2d 195, 201 (Miss.2004) (“ ‘[a]n act is arbitrary when it is done without adequately determining principle; not done according to reason or judgment, but depending upon the will alone, — absolute in power, tyrannical, despotic, non-rational,— implying either a lack of understanding of or a disregard for the fundamental nature of things .... An act is capricious when it is done without reason, in a whimsical manner, implying either a lack of understanding of or a disregard for the ■ surrounding facts and settled controlling principles.’ ” (quoting Electronic Data Sys. Corp. v. Mississippi Div. Of Medicaid, 853 So.2d 1192, 1205 (Miss.2003))). Although the courts of this State have not presented such detailed definitions in the context of a hearing officer’s review, the term “arbitrary and capricious” has been discussed as what is not permissible in the exercise of judicial discretion- — -that the correct exercise of judicial discretion is “ ‘not the indulgence of a judicial whim, but the exercise of judicial judgment, based on facts and guided by law, or the equitable decision of what is just and proper under the circumstances.’ ” Shiv-Ram, Inc. v. McCaleb, 892 So.2d 299, 321-22 (Ala.2003) (Houston, J., dissenting and quoting Black’s Law Dictionary 467 (6th ed.1990)). See also Goodyear Tire & Rubber Co. v. Vinson, 749 So.2d 393 (Ala.1999); and Coleman v. Pepper, 159 Ala. 310, 49 So. 310 (1909). Thus, the understanding of the term “arbitrary and capricious” in the jurisprudence of this State is in conformity with the authorities cited above and with the general definition set out in Black’s Law Dictionary 113 (8th ed.2004): the term “arbitrary” denotes a decision “founded on prejudice or preference rather than on reason or fact.”
The main opinion approves the rationale of the Court of Civil Appeals in reversing the hearing officer’s determination and remanding the case for a new hearing stating that the hearing officer failed to properly apply the law. Of course, this is not the standard by which the Court of Civil Appeals was required to review the hearing officer’s determination. The main opinion purports to cure that defect by explicitly stating the implicit holding of the Court of Civil Appeals that the hearing officer’s decision, based on the seven-part test for determining whether there was just cause for the termination of Wilson’s employment, was arbitrary and capricious. The opinion makes this assertion without benefit of a discussion of case authority, applying a definition of the term “arbitrary and capricious” to the hearing officer’s analysis, possibly because the application of a definition such as the one noted above would not support the reversal of the hearing officer’s determination. As the main opinion recognizes and the Court of Civil Appeals recognized, the courts of this State have noted with approval that “good and just cause” for terminating a teacher’s *1176 employment includes anything that is not arbitrary, irrational, unreasonable, or irrelevant to maintaining an efficient school system. Laidlaw Transit, Inc. v. Alabama Educ. Ass’n, 769 So.2d 872. (Ala.2000); and Ellenburg v. Hartselle City Bd. of Educ., 349 So.2d 605 (Ala.Civ.App.1977). However, these terms are not invested with any further meaning. The legislature’s statutory plan for reviewing the termination of the employment of tenured teachers leaves it to the hearing officer to supply that meaning based upon procedures set out in §§ 16-24-1 through 16-24-22, Ala.Code 1975.
The fundamental duty of this Court in applying § 16-24-10 is to give effect to the intent of the legislature based upon the plain language of the statute. Perry v. City of Birmingham, 906 So.2d 174 (Ala.2005); and Douglas v. King, 889 So.2d 534 (Ala.2004). The plain language of § 16-24-10 vests the hearing officer with the authority to determine what constitutes good cause in light of the evidence presented in each particular case. In this case, and under the applicable law, that means that the hearing officer had the responsibility of determining whether the Board’s proposal to terminate Wilson’s employment as a teacher was arbitrary, irrational, unreasonable, or irrelevant to maintaining an efficient school system. Moreover, in the context of our review it is the plain duty of the Court of Civil Appeals and this Court under § 16-2⅛-10 to affirm that decision unless it is arbitrary and capricious. Neither this Court nor Court of Civil Appeals is authorized to substitute a different standard, such as that the hearing officer “misapplied the law.” I submit that the hearing officer’s reference to a seven-part test as an aid in making this evaluation was not arbitrary and capricious so long as it was not “founded on prejudice or preference rather than on reason or fact.” Black’s 113. In fact, the hearing officer’s articulation of a rational means of evaluating the charges against Wilson complies exactly with his duty under the statute. The hearing officer was not arbitrary or capricious in considering whether the Board applied its rules evenhandedly and without discrimination to all its employees or whether the Board’s proposed discipline was reasonably related to the seriousness of an offense as factors in determining whether there was good cause to terminate Wilson’s employment. These are exactly the sorts of considerations that are designed to ascertain and avoid decisions based upon prejudice or bias.
For example, the hearing officer discussed two of the more serious charges against Wilson that arose from the loss of certain funds raised for the cheerleading program as follows:
“As the next two charges involve a single incident, allegations # 12 and 14 should be and must be treated as one. Allegation or Charge # 12 pertains to Laura Wilson’s failure to follow the ‘Local School Accounting Manual’ and Board policy relating to receipts and disbursements of cheerleader funds for the past two years. Allegation or Charge # 14 involves a 2003-2004 event when Laura Wilson misplaced or lost some $5,970.00 of fund raising proceeds. “As indicated earlier, herein, during 2003-2004, on October 28, 2003 the cheerleaders under the auspices of the school and [Wilson] conducted a fund raiser. Same was successful in netting some $5,970.00. The ‘Local School Accounting Manual’ consists of some 63 pages. A section thereof is headed ‘receipting money’ and contains statements therein covering (1) a ‘deposit policy’ which states: ‘At the end of each day all monies on hand in excess of $100.00 should be deposited with the bank as well as (2) an emphasized statement di *1177 recting that ‘the Principal is directly responsible in the handling of monies received. It is the ultimate responsibility of the Principal for any shortages resulting from errors or otherwise in the handling of school monies.’
“Admittedly, Ms. Wilson did not make the deposit on the 18th of October, a Saturday, a day on which banks are usually closed, nor on Monday, October 20th. Precisely when she realized she hadn’t deposited the funds and/or when she realized the funds were missing is not clear. Again, undisputed is the fact that Ms. Wilson did not report the incident until October 28th. She and the Principal reported it on November 5th to the sheriff but not to the school’s Administration.
“Laura Wilson should have notified her Principal immediately upon discovering the loss. The Principal (and the coach) should have notified the sheriff immediately upon the Principal’s being advised about the situation. Why wait several days until November 5th to report the incident to the sheriff?
‘Was she wrong? Most definitely. Was Principal Ledbetter wrong? Again, most definitely. The sheriffs investigation cleared Laura Wilson of any culpability. Who stole the money? What happened to the funds? The matter to this day remains a mystery.
“As the Superintendent accepted the statements of Ms. Wilson, coupled with the conclusions of the sheriff, and merely admonished her as to deposit procedures instead of bringing termination proceedings at that time, is this really something that should be brought to the forefront some 18 months later?
“Though District procedure and policy were not adhered to, no monies were lost. All checks were replaced by the makers thereof and the cash portion was paid by the coach herself. It was an expensive lesson for Ms. Wilson and one not likely to reoccur.”
Thus, the hearing officer discussed the evidence before him, considered it in light of standards that recognized the fairness and appropriateness of the consequences that resulted from the conduct under the particular circumstances and concluded that terminating Wilson’s employment as a teacher was “arbitrary, irrational, unreasonable, or irrelevant to maintaining an efficient school system,” and therefore that there was no good cause for terminating Wilson’s employment. The quotation from the hearing officer’s determination noted above exemplifies the entire 24-page document — it is a thoughtful examination of the evidence and the facts followed by plain statements of the reasons supporting the hearing officer’s conclusions as to the appropriate consequences for Wilson. Thus, even though I might have come to a different conclusion than the hearing officer on one or more of the allegations in the complaint based upon my review of the evidence and arguments contained in the record before us, this Court’s standard of review is not whether another reviewer might disagree with the hearing officer. Rather, we must consider whether the hearing officer’s conclusions were arbitrary and capricious, and I do not believe that this Court can fairly or correctly fit the hearing officer’s determination into any definition of arbitrary and capricious. Certainly the hearing officer’s determination is not “founded on prejudice or preference rather than on reason or fact.” Black’s 113.
Although the Court of Civil Appeals dismissed the hearing officer’s consideration of a seven-part analysis for determining whether Wilson’s contract could be canceled for just cause as an improper consideration of a test used in collective-bargain *1178 ing agreements, the test has in fact been often employed by arbitrators as a means for explaining whether an employment termination is correct. See, e.g., Summit County Children Servs. Bd. v. Communication Workers of America, Local # 516, 113 Ohio St.3d 291, 865 N.E.2d 31 (2007)(holding that the test was properly applied to consider whether the employment of a county employee who worked for the department of children’s services was properly terminated); American Fed’n of State, County & Mun. Employees, Distr. Council 88, AFL-CIO v. City of Reading, 130 Pa. Commw. 575, 568 A.2d 1352 (1990)(holding that an arbitrator’s determination that a city could properly terminate employment for just cause under the application of a similar test was an appropriate determination that the reviewing court was not entitled to second-guess). Further, this seven-part test attributed to arbitrator Carroll Daugherty in Whirlpool Corp. v. International Union of Elec., Radio, & Mach. Workers Local 808, 58 Lab. Arb. (BNA) 421 (1972), is often advocated as a reasonable basis for what constitutes “just cause” in the resolution of employment disputes, whether those disputes arise from collective-bargaining agreements or other agreements or employment situations. See generally Russell E. Joki, The History and Application of Supplemental Contracts for Coaches — Does Due Process Exist in Their Game Plan?, 41 Idaho L.Rev. 293 (2005); Kurt H. Decker, Pennsylvania’s Whistleblower Law’s Extension to Private Sector Employees: Has the Time Finally Come to Broaden Statutory Protection for All At-will Employees?, 38 Duq. L.Rev. 723 (2000); and Mollie H. Bowers and E. Patrick McDermott, Sexual Harassment in the Workplace: How Arbitrators Decide, 48 Clev. St. L.Rev. 439 (2000).
The use of the term “collective bargaining” by the main opinion and the Court of Civil Appeals to imply some sort of new analysis that is at odds with the law of this State completely mischaracterizes what § 16-24-10(a) requires of the hearing officer. The fact that the hearing officer employed seven points of consideration that had been considered in employment disputes in other contexts as a factor in deciding whether good cause existed in this case does not mean that the hearing officer imposed any new standard. Rather, the seven points provided a framework for the hearing officer’s statement of the rationale for his decision. The hearing officer sets foHh his rationale, and the reviewing court must apply the correct standard of reviewing that rationale. The fact that other reviewing courts review other arbitrators’ decisions under a standard of whether it complies with the employment agreement or “draws its essence from the collective bargaining agreement” does not affect the standard of review that this Court and the Court of Civil Appeals must apply under § 16 — 24—10(b). That standard is whether the hearing officer’s determination is arbitrary and capricious. That is, the reviewing court must consider whether the hearing officer’s rationale is based upon reason and fact rather than on preference or prejudice. Even a cursory review of the hearing officer’s comprehensive and critically reasoned determination will support a legal and common-sense conclusion that his determination was not arbitrary and capricious. By disregarding the plain language of § 16-24-10 and substituting different requirements on the hearing officer and upon the appellate review of the hearing officer’s findings, this Court abandons its duty to construe and apply acts of the legislature.[7]
*1179 In addition to the fact that the main opinion and the Court of Civil Appeals have superimposed an additional standard of review on § 16-24-10(b), the effect of the opinion this Court releases today will be to reduce the degree of reasoned consideration by hearing officers faced with review of terminations of tenured teachers. In the context of this case, it sends a message to teachers that their employment will be evaluated on popularity and political considerations rather than on facts and fairness. That is, the main opinion operates in precise opposition to the statutory requirement of § 16-24-8 that a contract cancellation may not be based on “political or personal reasons.” Moreover, the main opinion leaves appellate review without any ascertainable standard. The term “arbitrary and capricious” is now conflated with what was previously the standard for appellate review. For all that appears in the main opinion, all the hearing officer need do on remand to satisfy the good-cause standard is to assert, without benefit of any analytical factors, that the Board’s proposed sanction is either “arbitrary, irrational, unreasonable, or irrelevant to maintaining an efficient school system,” under Laidlaw Transit and El-lenburg, supra. I believe that the main opinion commits a serious error, in contravention of the plain language of § 16-24-10 governing the scope of this Court’s review, and I dissent.

. See, e.g., Ala.Code 1975, § 2-12-4 ("The court may affirm the decision or remand the case for further proceedings, or it may reverse or modify the decision if it was affected by an error of law or was unsupported by substantial evidence or was arbitrary or capricious."); Ala.Code 1975, § 2-31-15 ("[T]he commissioner’s ruling shall be considered prima facie just and correct and shall not be overturned unless the circuit court finds that the commissioner’s action was arbitrary and capricious ... or that the commissioner erred to the prejudice of the appellant’s substantial rights in his application of the law."); Ala.Code 1975, § 22-llA-64(f) (“The court may reverse or modify the decision .,. if ... the final decision ... (5) Is affected by other error of law. ... (7) Is arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.”); Ala.Code 1975, § 27-2-32(e) (“The court shall revise, vacate or modify the commissioner's decision ... if it finds that; (1) The commissioner erred to the prejudice of appellant's substantial rights in his application of the law; ... or (3) The commissioner's action was arbitrary or capricious.”); Ala. Code 1975, § 34-13-31(c) ("The court ... shall set aside the order, rule or action ... if the court finds that the board erred to the prejudice of the appellant's substantial- rights in its application of the law ... or that the order was arbitrary, capricious or inconsistent with respect to any of the material issues involved ...."); Ala.Code 1975, § 34-17A-17(f) (“The court may reverse ... the decision of the board if ... the disciplinary action ... involves any of the following circumstances; ... (4) An error of law. ... (6) A finding that is arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.”); Ala.Code 1975, § 34-27-37(d) (“An application for rehearing ... is appropriate only if the final decision is ... (5) Affected by other error of law; ... or (7) Unreasonable, arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.”); Ala.Code 1975, § 41-22-17(c) (“Such application for rehearing will lie only if the final order is ... (5) Affected by other error of law; ... or (7) Unreasonable, arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.”); and Ala.Code 1975, § 41-22-20(k) ("The court may reverse the ... decision ... if the court finds ... the agency action [to be] ... (5) Affected by other error of law; ... or (7) Unreasonable, arbitrary, or capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.”).

. “ 'Words used in a statute must be given their natural, plain, ordinary, and commonly *1179 understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.' " Blue Cross & Blue Shield of Alabama, Inc. v. Nielsen, 714 So.2d 293, 296 (Ala.1998) (quoting IMED Corp. v. System Eng'g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992)). See also State v. Lupo, 984 So.2d 395 (Ala.2007).