PROFESSIONALS GUILD OF OHIO, Appellant,

v.

FRANKLIN COUNTY CHILDREN SERVICES, Appellee.

[Cite as *Professionals Guild of Ohio v. Franklin Cty. Children Servs.*, 180 Ohio App.3d 91, 2008-Ohio-6682.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 08AP–592.

Decided Dec. 18, 2008.

John S. Campbell--Orde, for appellant.

Ron O'Brien, Franklin County Prosecuting Attorney, and Denise L. DePalma, Assistant Prosecuting Attorney, for appellee.

---

Sᴀᴅʟᴇʀ, Judge.

{¶ 1} Appellant, Professionals Guild of Ohio ("PGO"), appeals from the judgment of the Franklin County Court of Common Pleas, in which that court denied PGO's motion to vacate an arbitration award in which the arbitrator designated PGO as the "losing party" for purposes of fees incurred in connection with an arbitration involving appellee, Franklin County Children Services ("FCCS"), pursuant to the parties' collective bargaining agreement ("CBA").

{¶ 2} Tonya Sowell was formerly employed with FCCS. Sowell is a member of PGO. On April 16, 2007, Sowell was allegedly insubordinate to her supervisor during a discussion that the supervisor initiated regarding Sowell's work habits. This prompted the supervisor to write Sowell a letter of instruction dated the same day, in which Sowell was warned, inter alia, not to commit any further insubordination. The letter of instruction further stated: "In order to avoid future misunderstandings, your morning break will be from 10:00 to 10:15, and your afternoon break will be from 3:00 to 3:15. If circumstances prevent you from taking a break at these times, you will need to let me know when you do take it. All activities outside of work will be confined to these 2 fifteen minute breaks, as well as your lunch hour." On April 19, 2007, the supervisor called Sowell into her office for another discussion, where another confrontation took place during which Sowell was allegedly insubordinate.

{¶ 3} On April 24, 2007, FCCS's human resources department issued a pre-disciplinary-hearing notice, advising Sowell that a pre-disciplinary hearing would he held on May 10, 2007. The agency held the pre-disciplinary hearing, which was attended by a PGO representative. The PGO representative argued that the discussions wherein Sowell was allegedly insubordinate constituted employee disciplinary meetings under the CBA, and that FCCS had breached the CBA by failing to provide Sowell with union representation during those meetings. The hearing officer found that the April 2007 meetings did not trigger the requirement that FCCS advise Sowell of her right to have a union representative present. Based on the hearing officer's further findings and recommendations, FCCS ultimately terminated Sowell's employment on May 31, 2007.

{¶ 4} PGO grieved the termination and the matter proceeded to arbitration under the CBA.[1] PGO argued, "The Employer did not have just and reasonable

---

1. As the arbitrator noted in his opinion and award, there was no formal written grievance filed in this case. Rather, "[t]he arbitration results from the parties electing to go directly to arbitration from the dismissal of * * * Sowell * * *."

cause to terminate Grievant[ ] because the Employer breached the Grievant's contract right to Union representation." Its position was that "restricting the grievant to specific break times * * * constituted discipline for which the grievant should have had Union representation present. This argument is based on the fact that other department employees were allowed to set their own break times." PGO alleged that by failing to ensure that Sowell had union representation during the April 16, 2007 discussion, which precipitated the Letter of Instruction imposing "discipline," FCCS had breached Article 8 of the CBA. Specifically, PGO cited Sections 8.2 and 8.3 of the CBA.

{¶ 5} Section 8.2 provides, "When a meeting is scheduled with an employee(s) in the Bargaining Unit for disciplinary purposes (e.g., verbal reprimand, written reprimand, suspension, discharge), the employee(s) will be advised in advance and allowed to have a representative of the Federation present." Section 8.3 provides, "If Management deems it necessary to conduct an investigatory interview and there is a reasonable expectation that the results of such an interview may lead to disciplinary action against the employee, the employee shall be notified of such interview and advised of his/her right to have a union representative present."

{¶ 6} FCCS disputed the argument that the April 16, 2007 meeting triggered the duty to allow the presence of union representation. Its principal position at the arbitration was that Sowell's insubordination provided FCCS with just cause to terminate her.

{¶ 7} On December 3, 2007, the arbitrator issued his opinion and award. The arbitrator noted that Sowell had admitted that she departed from two separate meetings with her supervisor and refused to comply with the supervisor's requests that she return. The arbitrator found that this conduct constituted insubordination. The arbitrator also found that the letter of instruction constituted discipline. The arbitrator employed the seven tests for just cause used by Carroll Daugherty in *Ent. Wire Co.* (1966), 46 Lab.Arb. Rep. 359 ("the Daugherty test"), which has been cited with approval by the Supreme Court of Ohio. See, e.g., *Summit Cty. Children Servs. Bd. v. Communication Workers of Am., Local 4546*, 113 Ohio St.3d 291, 2007-Ohio-1949, 865 N.E.2d 31. After applying the Daugherty test to the facts adduced, the arbitrator determined that *"the Agency did have good cause to discipline the grievant."* (Emphasis added.)

{¶ 8} In the final paragraph of his opinion, the arbitrator cited *Summit Cty. Children Servs. Bd.,* in which the Supreme Court of Ohio stated that "in the absence of language in the agreement that would restrict such review, the arbitrator, after determining that there was just cause to discipline an employee, has the authority to review the appropriateness of the type of discipline imposed." Id. at ¶ 21. The arbitrator concluded that termination was too severe and that

suspension for 60 days without pay is the appropriate discipline for Sowell's insubordination. The arbitrator's award states, "The grievant shall be made economically whole for the time off work in excess of 60 days, including benefits, but less any earnings from outside employment during that period. For the purposes of the Arbitrator's fee, the Union shall be considered the losing party."

{¶ 9} On February 26, 2008, PGO filed a motion to vacate, in part, the arbitration award, pursuant to R.C. 2711.13, which provides, "After an award in an arbitration proceeding is made, any party to the arbitration may file a motion in the court of common pleas for an order vacating, modifying, or correcting the award as prescribed in sections 2711.10 and 2711.11 of the Revised Code." Specifically, PGO relied upon R.C. 2711.10(D), which provides, inter alia, "[T]he court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if * * * [t]he arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

{¶ 10} PGO argued that the court should vacate the arbitrator's award because the arbitrator designated PGO as the losing party for purposes of the arbitration fee. PGO argued that the arbitrator exceeded his authority because he incorrectly interpreted the term "losing party," which is undefined in the CBA. FCCS argued that because the CBA does not define the term "losing party," it was within the arbitrator's discretion to determine who was the losing party. By decision issued June 10, 2008, and judgment entry journalized June 20, 2008, the trial court denied PGO's motion.

{¶ 11} PGO timely appealed and advances one assignment of error for our review, as follows:

> The lower court erred by misapplying the standard for review of arbitration awards and denying PGO's motion to vacate the portion of the arbitration award designating PGO as the losing party for arbitration fee purposes.

{¶ 12} We begin by recalling the law applicable to review of a decision on a motion to vacate an arbitration award pursuant to R.C. 2711.10(D). "Once the arbitrator has made an award, that award will not be easily overturned or modified. It is only when the arbitrator has overstepped the bounds of his or her authority that a reviewing court will vacate or modify an award." *Bd. of Trustees of Miami Twp. v. Fraternal Order of Police, Ohio Labor Council, Inc.* (1998), 81 Ohio St.3d 269, 273, 690 N.E.2d 1262, citing *Queen City Lodge No. 69, Fraternal Order of Police, Hamilton Cty., Ohio, Inc. v. Cincinnati* (1992), 63 Ohio St.3d 403, 406–407, 588 N.E.2d 802.

{¶ 13} An arbitrator derives his power from the parties' contract. An arbitrator exceeds his power in rendering an award if the award does not draw

its essence from the collective bargaining agreement being interpreted. *Summit Cty. Children Servs. Bd.*, 113 Ohio St.3d 291, 2007-Ohio-1949, 865 N.E.2d 31, ¶ 13. "An arbitrator's award is found to depart from the essence of the collective bargaining agreement when (1) it conflicts with the express terms of the agreement, and/or (2) the award lacks rational support or cannot be rationally derived from the agreement's terms." *Painesville City Local Schools Bd. of Edn. v. Ohio Assn. of Public School Emps., AFSCME, AFL–CIO & its affiliated, Local No. 393*, Lake App. No. 2005–L–100, 2006-Ohio-3645, 2006 WL 1976751, ¶ 18, citing *Ohio Office of Collective Bargaining v. Civ. Serv. Emps. Assn., Local 11* (1991), 59 Ohio St.3d 177, 572 N.E.2d 71, at syllabus.

{¶ 14} The converse principle is equally true. "An arbitrator's award draws its essence from a collective bargaining agreement when there is a rational nexus between the agreement and the award, and where the award is not arbitrary, capricious or unlawful." *Mahoning Cty. Bd. of Mental Retardation & Developmental Disabilities v. Mahoning Cty. TMR Edn. Assn.* (1986), 22 Ohio St.3d 80, 22 OBR 95, 488 N.E.2d 872, paragraph one of the syllabus.

{¶ 15} "Once it is determined that the arbitrator's award draws its essence from the collective bargaining agreement and is not unlawful, arbitrary or capricious, a reviewing court's inquiry for purposes of vacating an arbitrator's award pursuant to R.C. 2711.10(D) is at an end." *Findlay City School Dist. Bd. of Edn. v. Findlay Edn. Assn.* (1990), 49 Ohio St.3d 129, 551 N.E.2d 186, paragraph two of the syllabus, superseded by statute on other grounds, see *Cincinnati v. Ohio Council 8, Am. Fedn. of State, Cty. & Mun. Emp., AFL–CIO* (1991), 61 Ohio St.3d 658, 661–662, 576 N.E.2d 745.

{¶ 16} In this case, given the nature of the assignment of error presented to us, our inquiry is limited to whether the arbitrator's designation of PGO as the losing party draws its essence from the collective bargaining agreement; that is, whether there is a rational nexus between the CBA and that part of the award, and whether or not that part of the award is unlawful, arbitrary or capricious.[2]

{¶ 17} Section 6.6 of the CBA provides:

---

2. Initially, PGO argues that the arbitrator exceeded his authority by construing and applying the terms "losing party" and "losing side," because such a determination was outside the scope of the subject matter that the parties agreed to arbitrate. R.C. 2711.11(B) allows a court of common pleas to modify an award where "[t]he arbitrators have awarded upon a matter not submitted to them * * *." However, PGO never made a motion to modify the award. Therefore, this issue was not properly before the trial court, nor is it properly before us. However, even if this argument were properly before us, it would not alter our disposition of appellant's assignment of error. PGO does not cite, and our research fails to reveal, any support for PGO's proposition that the arbitrator cannot order either party to pay his fees

The cost of the federal mediation and conciliation service in providing a panel or panels, the cost of any proofs produced at the direction of the arbitrator, and the fee of the arbitrator shall be paid by the *losing side.*

\* \* \*

The arbitrator shall conduct a fair and impartial hearing of the grievance hearing and recording testimony from both parties, and applying the rules of the Federal Mediation and Conciliation Service. Only disputes involving a specific alleged violation of a particular Article and Section of the contract shall be subject to arbitration. The arbitrator's sole function shall be to interpret this Agreement and to determine whether the Agency or the Federation is failing to abide by its provisions. The arbitrator shall not have any authority to change, amend, modify, supplement or otherwise alter the Agreement or any part thereof in any respect.

\* \* \*

\* \* \* The costs of the services of the Federal Mediation and Conciliation Service in providing a panel or panels, the cost of any proofs produced at the direction of the arbitrator, the fee of the arbitrator, and the rent, if any, for the hearing room, shall be borne by the *losing party.*

(Emphasis added.)

■■ {¶ 18} The CBA does not define the terms "losing side" or "losing party." The question of the meaning of the terms is for the arbitrator in the first instance. *Taylor Bldg. Corp. of Am. v. Benfield,* 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 67. "[T]he arbitrator's interpretation of the contract is what the parties bargained for in agreeing to submit their disputes to final and binding arbitration." *Hillsboro v. Fraternal Order of Police, Ohio Labor Council, Inc.* (1990), 52 Ohio St.3d 174, 177, 556 N.E.2d 1186.

{¶ 19} PGO argues that the arbitrator was required to give these terms their ordinary dictionary definitions. For support of this proposition, PGO correctly cites *Internatl. Assn. of Firefighters, Local 67 v. Columbus* (2002), 95 Ohio St.3d 101, 766 N.E.2d 139, wherein the Supreme Court of Ohio held, "[a]n arbitrator is confined to \* \* \* construe the terms used in \* \* \* [a collective bargaining] agreement according to their plain and ordinary meaning." Id. at 103, 766

---

absent an express agreement—separate from the CBA—to *arbitrate* the issue of payment of arbitration fees. Such a proposition would mean either that every grievance arbitration would have to be followed by a separate fee arbitration related to the fees for the preceding arbitration (which would promote endless rounds of litigation, contrary to the purpose for arbitrating labor disputes), or that arbitrators would never recover fees absent an agreement by a party to be responsible for the fee. (The Federal Mediation and Conciliation Service ("FMCS"), which promulgates the list of qualified arbitrators for the CBA, has no power to compel payment of compensation to arbitrators. See FMCS Policies and Procedures Section 1404.4(d)(v), effective December 2005.)

N.E.2d 139, citing *Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Emp. Assn., Local 11, AFSCME, AFL–CIO* (1991), 59 Ohio St.3d 177, 180, 572 N.E.2d 71.

{¶ 20} PGO argues that because its position at the arbitration was that FCCS lacked just cause to *terminate* Sowell, and because the arbitrator ultimately determined that Sowell should not have been terminated, PGO cannot be the "losing party." It contends that because it would have been justified in having claimed to have won the arbitration by virtue of Sowell's reinstatement and award of back pay, its designation as the losing party was arbitrary and capricious.

{¶ 21} The issue upon which PGO based its grievance was whether FCCS "breached [Sowell's] contract right to Union representation" by failing to ensure that she had union representation at the April 16 and 19, 2007 meetings with her supervisor. It was because of this specific alleged breach of the CBA, PGO claimed, that FCCS was not entitled to terminate Sowell. The arbitrator did not find that FCCS had breached its duty under the CBA to afford Sowell union representation. Thus, PGO did not prevail on the bedrock issue underlying its grievance. Moreover, the arbitrator specifically found that *FCCS had just cause to discipline Sowell.* For these reasons, it was reasonable to designate PGO the losing party.

{¶ 22} It is true that PGO sought and obtained reversal of Sowell's termination; thus, it might also have been reasonable to designate FCCS as the losing party. But PGO sought reversal of Sowell's termination based on FCCS's alleged breach of the CBA. The arbitrator did not find that FCCS had breached the CBA; rather, the arbitrator based reversal of Sowell's termination on his conclusion that termination was too harsh a sanction for Sowell's insubordination. Thus, though PGO achieved its ultimate aim for Sowell, it did not prevail on the only arbitrable issue actually submitted, to wit: whether FCCS had breached the CBA, either by failing to afford Sowell the right to union representation or by disciplining her without just cause. ("The arbitrator's sole function shall be to interpret this Agreement and to determine whether the Agency * * * is failing to abide by its provisions." [3])

{¶ 23} Although it might have been reasonable to have designated either PGO or FCCS as the losing party, or to have designated both parties as losing parties, we do not substitute our judgment for that of the arbitrator in making that designation. "When a provision in a collective bargaining agreement is subject to more than one reasonable interpretation and the parties to the contract

---

3.  CBA, Section 6.6. See ¶ 17, herein.

have agreed to submit their contract interpretation disputes to final and binding arbitration, the arbitrator's interpretation of the contract, and not the interpretation of a reviewing court, governs the rights of the parties thereto." *Hillsboro,* 52 Ohio St.3d 174, 556 N.E.2d 1186, at syllabus.

{¶ 24} In our view, the arbitrator's designation of PGO as the losing party does not conflict with the language of the CBA and is not unlawful, arbitrary, or capricious, because it can be rationally derived from the agreement's terms under the particular facts of this case. Accordingly, we conclude that the arbitrator did not exceed his powers or so imperfectly executed them as to warrant vacation of the award. For this reason, we overrule PGO's single assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.

Judgment affirmed.

McGRATH, P.J., and BROWN, J., concur.