**HOCKING TECHNICAL COLLEGE, Appellee,**

v.

**HOCKING TECHNICAL COLLEGE EDUCATION ASSOCIATION, OEA/NEA et al., Appellants.**

[Cite as *Hocking Technical College v. Hocking Technical College Edn. Assn.* (1997), 120 Ohio App.3d 155.]

Court of Appeals of Ohio,
Fourth District, Athens County.

No. 96CA1750.

Decided March 26, 1997.

156

*Arter & Hadden* and *Gary S. Batke*, for appellee.

*Cloppert, Portman, Sauter, Latanick & Foley* and *Susan Hayest Kozlowski*; and *Leonard S. Sigall*, for appellants.

HARSHA, Judge.

Hocking Technical College Education Association, OEA/NEA and Joan Bartow, appellants, appeal an order of the Athens County Court of Common Pleas vacating an arbitrator's award which had reinstated Bartow's employment with Hocking Technical College.

Appellants assign the following error for our review:

"The lower court misapplied the standard of review for arbitration awards and thus erred in granting the college's motion to vacate arbitrator's award and by denying the complaint/petition to confirm arbitrator's award filed by the association and Joan Bartow."

## I

Joan Bartow worked as a media technician in the Learning Resource Center at Hocking Technical College ("the college"). As a member of the support staff, Bartow was included in a bargaining unit which was exclusively represented by the Hocking Technical College Education Association OEA/NEA ("the union"). From 1993 to 1996, support staff personnel were protected by, and subject to, a collective bargaining agreement ("CBA") negotiated by their union with the college.

In Article II of the CBA, the college reserved the right to suspend, discipline, demote or discharge all covered employees for "just cause." Moreover, Article XIII of the agreement expressly provided that "[e]mployees shall be disciplined or discharged for just cause only." Finally, paragraph four of Article XII, regarding attendance and tardiness, states that "[a]ny employee accumulating * * * seven unexcused absences in any consecutive 365 calendar day period will be subject to discharge for just cause."[1]

Article IV of the CBA provided a four-step procedure for resolving grievances. A "grievance" is defined by the agreement as "a claim that there has been a violation, misinterpretation or misapplication of any provision of this Agreement." The final step of the procedure permitted an employee to request that the grievance be resolved through arbitration. The agreement expressly provided, however, that the arbitrator does not have the authority to add to, subtract from, modify, change or alter any of the CBA's provisions. Finally, the agreement made the arbitrator's decision final and binding on the college, the union and the employee.

## II

Throughout the proceedings up to and including arbitration, the college had advanced three distinct reasons justifying its discharge of Bartow: insubordination, falsification of time records, and excessive unexcused absences. In vacating the arbitrator's award, however, the trial court narrowed its focus solely to the issue regarding Bartow's allegedly excessive unexcused absences. The evidence in the record relevant to that single issue reveals the following facts.

First, based upon timesheets personally maintained by Bartow, she was tardy twenty-one times from September 21, 1993 to April 8, 1994. Second, based upon the personal observations of Bartow's immediate supervisor during this same

---

1. Paragraph three of this article also provides that "[f]our (4) unexcused tardinesses in any consecutive thirty (30) calendar period will be considered one unexcused absence." A "tardiness," as defined in paragraph two, occurs any time an employee arrives after the scheduled starting time.

time period, he documented eight instances of tardiness in addition to the twenty-one occasions noted by Bartow. And, third, also during the same period of time, Bartow was totally absent from work without excuse seven times.

### III

On April 8, 1994, the college notified Bartow of its intention to discharge her. As noted above, the college gave three reasons: insubordination, falsification of time records, and excessive unexcused absences. Bartow was suspended with pay pending a discharge hearing. Bartow and a union representative were present at a hearing in which the college presented documentation in support of its discharge of her. No information rebutting the college's charges was provided on Bartow's behalf. By letter dated April 26, 1994, the college immediately terminated Bartow's employment for the same three reasons given in the April 8, 1994 notification.

Subsequently, the union filed a formal grievance against the college, alleging that Bartow had been discharged in violation of the just-cause standard in Article XIII of the CBA. In response, the college denied the grievance, since it believed that no violation of the agreement had occurred in Bartow's discharge.

Following a hearing on the grievance, the arbitrator determined that the college's failure to provide Bartow with formal warnings that her various documented misdeeds would subject her to possible termination "requires a finding that no just cause existed for Grievant's discharge." The arbitrator also expressed concern that the college had not formally tallied or computed Bartow's absences and tardiness prior to notifying her of the reasons for its decision to dismiss her. As a result, the arbitrator ordered the college to reinstate Bartow to her former or a comparable position with full back pay, vacation and holidays for the 1993–1994 and 1995–1996 academic years. However, due to his reservations about Bartow's "habitual tardiness" and "her failure to acknowledge deadlines or follow instructions," the arbitrator did not award her back pay and benefits for the 1994–1995 academic year.

Pursuant to R.C. 2711.10, the college filed a motion with the Athens County Court of Common Pleas to vacate the arbitrator's award.[2] The college argued

---

2. R.C. 2711.10 states:

"In any of the following cases, the court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if:

"(A) The award was procured by corruption, fraud, or undue means.

"(B) There was evident partiality or corruption on the part of the arbitrators, or any of them.

"(C) The arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the

that the arbitrator exceeded his powers and acted outside the scope of the CBA by interpreting the agreement so as to add to, subtract from, or modify the college's obligations. In response, the union and Bartow filed a separate action with the common pleas court, pursuant to R.C. 2711.09, to confirm the arbitrator's award.[3] The common pleas court granted the college's motion to consolidate these two actions.

After examining the parties' briefs, the common pleas court granted the college's motion to vacate the arbitrator's award and denied the union and Bartow's motion to confirm it. The court ruled that the arbitrator's award, failing to find just cause for Bartow's discharge, was arbitrary and capricious due to the imposition upon the college of procedures not incorporated in the parties' agreement. Furthermore, the arbitrator's finding of no just cause, despite Bartow's unexcused absences in excess of those permitted by Article XII of the agreement, improperly added to or modified the parties' obligations. The union and Bartow filed this appeal from the court's judgment vacating the award.

## IV

At the outset, we recognize the strong public policy in Ohio favoring the arbitration of public sector labor disputes. *Hillsboro v. Fraternal Order of Police, Ohio Labor Council, Inc.* (1990), 52 Ohio St.3d 174, 177–178, 556 N.E.2d 1186, 1189–1191; *Mahoning Cty. Bd. of Mental Retardation v. Mahoning Cty. TMR Edn. Assn.* (1986), 22 Ohio St.3d 80, 83–84, 22 OBR 95, 97–99, 488 N.E.2d 872, 874–876. An arbitrator's power, however, is limited by certain statutory constraints. See R.C. 2711.10 and 2711.11. For example, an arbitration award will be vacated if the arbitrator exceeds his powers in making the award. R.C. 2711.10(D).

An arbitrator acts within his powers so long as the award "draws its essence" from the applicable collective bargaining agreement. *Goodyear Tire & Rubber Co. v. Local Union No. 200* (1975), 42 Ohio St.2d 516, 71 O.O.2d 509, 330 N.E.2d 703, paragraph one of the syllabus. The award draws its essence from the agreement when there is a rational nexus between the agreement and the

controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

"(D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

**3.** R.C. 2711.09 provides:

"At any time within one year after an award in an arbitration proceeding is made, any party to the arbitration may apply to the court of common pleas for an order confirming the award. Thereupon the court shall grant such an order and enter judgment thereon, unless the award is vacated * * * as prescribed in section[ ] 2711.10 * * * of the Revised Code."

award and it is not arbitrary, capricious or unlawful. *Findlay City School Dist. Bd. of Edn. v. Findlay Edn. Assn.* (1990), 49 Ohio St.3d 129, 551 N.E.2d 186, paragraph two of the syllabus; *Mahoning Cty. Bd. of Mental Retardation, supra,* at paragraph one of the syllabus. Conversely, an award departs from the essence of the collective bargaining agreement when the award conflicts with the express terms of the agreement. *Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Employees Assn., Local 11, AFSCME, AFL–CIO* (1991), 59 Ohio St.3d 177, 572 N.E.2d 71, syllabus.

■ In this appeal, the union and Bartow argue that the arbitrator's award reinstating Bartow due to the absence of just cause for her discharge draws its essence from the parties' collective bargaining agreement. They also contend that the common pleas court has inappropriately substituted its judgment for that of the arbitrator. On the other hand, the college submits that the court properly vacated the arbitrator's award because he exceeded his powers. That is,· the arbitrator's determination that there was no just cause simply because the college failed to issue more formal warnings to Bartow imposed an additional requirement upon the college which the union had not secured in the agreement.

## V

The central issue in this case involves the application of Article XII, paragraph four, of the collective bargaining agreement. It states:

*"Any employee accumulating* five (5) unexcused absences in any consecutive sixty (60) calendar day period, or *seven (7) unexcused absences in any consecutive 365 calendar day period will be subject to discharge for just cause."* (Emphasis added.)

The parties' arguments regarding this provision are easily summarized. On one hand, the union and Bartow contend that this paragraph permits the college to discharge an employee who has exceeded the prescribed number of unexcused absences only if the college, otherwise, has just cause to discipline the employee. That is, the language "will be subject to discharge for just cause" allegedly requires a two-step analysis in order to determine whether an employee was properly discharged under this paragraph: First, did the employee exceed the number of unexcused absences, and if so, second, did the college have just cause to discipline the employee? The arbitrator applied this analysis in his award.

On the other hand, the college submits that this paragraph simply provides that an employee's accumulation of an objective number of unexcused absences within a specific time period equals just cause for discharge. The college argues for a one-step analysis in order to determine whether it properly discharged an employee under this paragraph: Did the employee exceed the number of

unexcused absences within the applicable time period? If so, the college has just cause to discharge that employee? The common pleas court applied this analysis.

Thus, the determinative issue in this case is simply whether or not Article XII(4) is reasonably subject to different interpretations. If it is, the arbitrator's interpretation of the contract must govern. *Hillsboro, supra.* On the other hand, if the contract is not ambiguous and can only reasonably be construed to mean in essence that seven unexcused absences constitutes "just cause" *per se,* the trial court's judgment is correct.

## VI

After considering the CBA, the arbitrator's award and the judgment of the common pleas court, we hold that the court properly vacated the award, since the arbitrator exceeded his powers. Although we acknowledge the public policy favoring arbitration, we agree with the common pleas court's determination that the award departs from the essence of the CBA. Our independent and *de novo* examination of the record reveals that the award clearly conflicts with the express terms of the parties' collective bargaining agreement.

A similar issue was presented to the Supreme Court of Ohio in *Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Employees Assn., Local 11, AFSCME, AFL–CIO, supra.* The case involved the termination of an aide employed by a facility for mentally retarded individuals. After being discharged for allegedly verbally and physically abusing a resident of the facility, the aide took the dispute to arbitration. Although the arbitrator awarded reinstatement to the aide, the common pleas court vacated the award and the appellate court upheld the common pleas court's judgment.

At issue in that case was the following disciplinary provision in the parties' collective bargaining agreement:

"Disciplinary action shall not be imposed upon an employee except for just cause. * * * In cases involving termination, if the arbitrator finds that there has been an abuse of a patient * * *, the arbitrator does not have authority to modify the termination of an employee committing such abuse."

The arbitrator in the case conducted a bifurcated hearing on the employee's grievance. In the first phase, the arbitrator defined the term "abuse." As a result of the second phase, the arbitrator determined that the employee had "abused" a resident of the facility. Despite his factual finding of "abuse," though, the arbitrator nevertheless reinstated the employee to her former position. The arbitrator reasoned that the employer violated the notion of fair treatment, as implied in the just-cause provision cited above, by neglecting to inform the employee of the possible form of discipline. *Id.,* 59 Ohio St.3d at 182, 572 N.E.2d at 75–76.

The Supreme Court reviewed this provision and held that the arbitrator's interpretation violated the clear and unambiguous terms expressed in the parties' agreement. *Id.* at 183, 572 N.E.2d at 76–77. The court noted that the award imposed an additional requirement upon the employer in order to discharge its employee for abusing a resident (*i.e.,* fair treatment) which was not expressly provided for in the agreement. *Id.* Specifically, the court held that a just-cause analysis was not required in the case because "abuse is *per se* just cause" pursuant to the explicit terms of the agreement. *Id.* at 184, 572 N.E.2d at 77–78. Only if the arbitrator had found that the employee's actions amounted to something less than "abuse" would a just-cause analysis be necessary under the agreement. *Id.* The court concluded that the arbitrator, in effect, improperly created his own contract rather than apply the contract agreed to by the parties. *Id.* at 183, 572 N.E.2d at 76–77.

This court is presently faced with circumstances analogous to those in *Ohio Office of Collective Bargaining.* That is, the agreement in this case simply provides that "[a]ny employee accumulating * * * seven unexcused absences in any consecutive 365 calendar day period will be subject to discharge for just cause." The arbitrator here found, as a fact, that Bartow "was absent on numerous occasions and *sufficient in number to cause her discharge under the provisions of the Collective Bargaining Agreement.*" (Emphasis added.) Despite this finding, though, the arbitrator determined that the provision required the college to notify Bartow that her conduct subjected her to possible discharge and that in the absence of such notice, the college did not possess just cause to discharge her.

Like the Supreme Court above, we hold that the arbitrator's interpretation of this CBA violated the clear and unambiguous terms expressed in the agreement. The award imposed an additional requirement upon the college in order to discharge Bartow for her excessive unexcused absences (*i.e.,* notice of possible discipline) which was not expressly provided for in the agreement.[4] Similar to the Supreme Court in *Ohio Office of Collective Bargaining,* we believe that a just-cause analysis is unnecessary in this case because excessive unexcused absence is *per se* just cause pursuant to the express terms of this agreement. In other words, the terms of the CBA are not ambiguous and thus not reasonably subject to different interpretations. Accordingly, no deference is due the arbitrator's interpretation of the agreement. Only if the arbitrator had found that Bartow had less than the prescribed number of unexcused absences would a just-

---

4. The college has also argued that the union was attempting to resurrect the progressive disciplinary procedures which the college had explicitly rejected throughout the parties' negotiation of their most recent agreement.

cause analysis be required under this agreement. To interpret Article XII(4) to require the specified number of absences and instances of tardiness plus just cause before taking disciplinary action would render that paragraph either meaningless or redundant.

Our decision in this matter is further supported by the holding in *Fraternal Order of Police, Ohio Labor Council v. Mahoning Cty. Sheriff's Dept.* (Mar. 22, 1995), Mahoning App. No. 94 C.A. 81, unreported, 1995 WL 138903:

"Where the collective bargaining agreement contains a provision that certain conduct will result in a specific discipline, an arbitrator must affirm that discipline once it has been determined that the violation occurred."

In this case, the relevant provision in the agreement provides that any employee who accumulates seven unexcused absences in a three-hundred-sixty-five-day period is subject to discharge for just cause. Since the express terms of this agreement clearly prescribe that a specific disciplinary action can result from the performance of certain conduct, the only proper review for the arbitrator to perform is to determine whether the prohibited conduct occurred. Once that issue has been resolved, the arbitrator must affirm the particular disciplinary action chosen by the employer. Because the arbitrator in this case determined that Bartow was absent without excuse for a number of times sufficient to trigger her discharge for just cause under the parties' agreement, the college's discharge of her should have been upheld.

We also agree with the trial court's implicit finding that the arbitrator's concern over the timing of a formal computation of absences does not control the outcome of this case. The college was steadfast in its grounds for dismissal. While failure to formally tally the exact number of absences might conceivably have created a burden-of-proof problem ultimately, it could not affect either the potential ambiguity of the CBA or the choice of grounds for disciplinary action consistently expressed by the college.

In conclusion, since the arbitrator in this case essentially created his own contract rather than apply the contract agreed to by the college and the union, he has clearly exceeded his power in violation of R.C. 2711.10(D). Due to the inherent conflict between the arbitrator's award and the express terms of the parties' agreement, the award does not draw its essence from the agreement. *Goodyear Tire & Rubber Co.* and *Ohio Office of Collective Bargaining, supra.*

Accordingly, the judgment of the Athens County Court of Common Pleas vacating the arbitrator's award is hereby affirmed.

*Judgment affirmed.*

STEPHENSON, P.J., and KLINE, J., concur.