KATHLEEN ANN KEOUGH, A.J.:
{¶ 1} Appellant, the city of Cleveland (the "city"), appeals from the trial court's judgment denying its motion to vacate an arbitrator's award and granting the motion of the Municipal Foreman and Laborers' Union, Local 1099 (the "union"), to affirm the award. Finding no merit to the appeal, we affirm.
I. Factual and Procedural History
{¶ 2} Traci Pierson is a bargaining unit member of the union, and covered by the collective bargaining agreement between the city and the union effective April 1, 2011 through March 31, 2013. Prior to her termination, Pierson was employed by the city for 15 and a half years as a real estate maintenance worker in the city's department of public works, division of park maintenance.
{¶ 3} In the two years prior to her discharge, the city took three disciplinary actions against Pierson. On March 27, 2013, she was suspended for one day for conduct unbecoming an employee and insubordination after she walked out of a predisciplinary conference. This suspension was held in abeyance and was to be rescinded if no further violations occurred.
*192 {¶ 4} However, on August 14, 2013, after Pierson swiped in to work with her electronic timecard and then left for 30 minutes, the city suspended her for 30 days for neglect of duty, conduct unbecoming an employee, and unethical conduct while on duty. On December 16, 2013, the city again suspended Pierson for 30 days for violence in the workplace; conduct unbecoming an employee; disorderly, immoral, or unethical conduct while on duty; offensive conduct or language toward another employee, superior, or the public in the course of employment; and failure of good behavior. This suspension followed a workplace altercation in which Pierson called her superior and coworkers extremely derogatory names and threatened another employee that she would "kick his ass."
{¶ 5} In July 2014, the city issued an attendance policy that required employees who were sick to call in to a dedicated telephone line at least one hour before their scheduled starting time. Under the policy, employees who failed to call in and report to work would be considered absent without leave. Further, park maintenance employees would not be permitted to work if they reported to work more than one hour late after the start of their shift.
{¶ 6} On August 5, 2014, Pierson called the dedicated phone line at 5:40 a.m. and left a message requesting four hours of sick leave for that day. At 9:40 a.m., more than two hours after her 7 a.m. scheduled start time, she arrived at the station and reported to her supervisor, Larry Robinson, for her work assignment. At the hearing before the arbitrator, Robinson testified that he told Pierson not to swipe in because she was more than an hour late. He then called his supervisor, Todd Alexander, manager of the division of park maintenance and properties, who told Robinson to tell Pierson to go home. Robinson said that Pierson refused to go home and told him she "didn't have to" under the collective bargaining agreement. Robinson then called Alexander again, who told him that he would talk to Pierson. Robinson testified that he did not tell Pierson that she would be disciplined if she did not leave the premises as instructed.
{¶ 7} Alexander testified that before going to the station, he spoke with Robin Leftridge, acting commissioner of the division of park maintenance and properties. Leftridge testified that she advised Alexander to go to the site and tell Pierson that she must leave, and that if she did not do so, the city would consider her to be a trespasser and call the police.
{¶ 8} Alexander testified that he arrived at the site at 10:41 a.m., and advised Pierson he had been told to ask her to leave for the day. Alexander stated that he read the divisional attendance procedure to Pierson, told her that she could not work that day, and asked her to go home. After Pierson refused, Alexander told her that if she did not leave, he would call the police and have her charged with trespassing. Pierson responded, "do it," and refused to leave. Alexander then called the police. Pierson remained on the scene but finally left at 11:30 a.m., immediately before the police arrived. Alexander admitted that he did not advise Pierson that she would be discharged if she did not leave the premises. On August 22, 2014, after a predisciplinary conference, the city terminated Pierson's employment, the next step in the city's progressive discipline policy. The termination notice advised Pierson that her conduct on August 5, 2014, included neglect of duty, incompetency in performance of duties, conduct unbecoming an employee in the public service, and insubordination, in violation of Rule 9.10 of the city's civil service commission rules.
{¶ 9} Pierson filed a grievance regarding her termination, which the city denied.
*193 The matter then proceeded to arbitration, as provided in the collective bargaining agreement.[1] The issue submitted to the arbitrator was whether Pierson had been terminated for just cause under the collective bargaining agreement and, if not, what was the proper remedy?
{¶ 10} In his decision, the arbitrator found that Pierson had been terminated for insubordination. He noted that to prove an employee was insubordinate, the employer must demonstrate: 1) the employee's refusal to obey was knowing, willful, and deliberate; 2) the order was explicit and clearly given so that the employee understood its meaning and its intent as a command; 3) the order was reasonable and work related; 4) the order was given by someone in authority; 5) the employee was made aware of the consequences of failing to perform the work or follow the directive; and 6) if practical, the employee was given time to correct the allegedly insubordinate behavior.
{¶ 11} The arbitrator found that Pierson's refusal to leave the premises and go home was "knowing, willful, and deliberate." "Put simply," the arbitrator found, "the grievant's actions were a refusal to obey" an order that was "explicit" and "clearly given," and that Pierson understood to be a command. Further, the arbitrator found that the order was reasonable and work related, and that Pierson was given time to comply with the order. Nevertheless, the arbitrator found that Pierson was not made aware of the disciplinary consequences of not following the order, i.e., that she would be subject to discipline if she did not follow Anderson's order. Accordingly, the arbitrator concluded that the city had not proved that Pierson was insubordinate, and therefore, had no just cause to discharge her. The arbitrator ruled that Pierson should be reinstated to her former position and that she was entitled to back pay and benefits.
{¶ 12} The city subsequently filed a motion in the common pleas court pursuant to R.C. 2711.13 to vacate the arbitrator's award on the grounds that the arbitrator had exceeded the authority granted to him by the parties' collective bargaining agreement. The union filed a brief opposing the city's motion, and a cross-motion requesting that the court affirm the award.
{¶ 13} The trial court subsequently granted the union's motion and denied the city's motion. In its opinion affirming the award, the trial court found that the arbitrator's award drew its essence from the collective bargaining agreement, and was not unlawful, arbitrary, or capricious. Accordingly, the trial court held that it had no authority to vacate the award. This appeal followed.
II. Law and Analysis
A. Standard of Review
{¶ 14} Ohio has codified a preference for arbitration to resolve disputes between public employers and their employees. R.C. 4117.10(A) ; R.C. 2711.01 et seq. Therefore, the authority of courts to vacate an arbitration award is "extremely limited." Cedar Fair, L.P. v. Falfas , 140 Ohio St.3d 447, 2014-Ohio-3943, 19 N.E.3d 893, ¶ 5. Courts must generally presume an arbitrator's award to be valid and enforceable, and a common pleas court reviewing an arbitrator's decision may not substitute its judgment for that of the arbitrator. N. Royalton v. Urich , 8th Dist. Cuyahoga No. 99276, 2013-Ohio-2206, 2013 WL 2382821, ¶ 14.
*194 {¶ 15} An appellate court's review of an arbitration award is similarly limited and is confined to an evaluation of the trial court's order confirming, vacating, or modifying the award. Cuyahoga Metro. Hous. Auth. v. FOP, Ohio Labor Council, Inc. , 8th Dist. Cuyahoga No. 104319, 2017-Ohio-190, 2017 WL 237821, ¶ 8, citing Miller v. Mgt. Recruiters Internatl., Inc. , 180 Ohio App.3d 645, 2009-Ohio-236, 906 N.E.2d 1162, ¶ 9 (8th Dist.). Appellate review does not extend to the merits of an arbitration award absent evidence of material mistake or extensive impropriety. Id. So long as arbitrators act within the scope of the contract, they have great latitude in issuing a decision. Cedar Fair at ¶ 16. Because the parties have bargained for and agreed to accept the arbitrator's findings of fact and interpretation of the contract, "[a]n arbitrator's improper determination of the facts or misinterpretation of the contract does not provide a basis for reversal of an award by a reviewing court." Id. Thus, a reviewing court may not reject an arbitrator's findings of fact or interpretation of the agreement simply because it disagrees with them. S.W. Ohio Regional Transit Auth. v. Amalgamated Transit Union, Local 627 , 91 Ohio St.3d 108, 110, 742 N.E.2d 630 (2001).
B. Did The Arbitrator Exceed His Powers?
{¶ 16} Under R.C. 2711.10(D), "the court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if * * * [t]he arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."
{¶ 17} "[A collective bargaining agreement] is limited to the provisions bargained for and * * * an arbitrator may not apply extraneous rules to the agreement, where those rules were not bargained for and are contrary to the plain terms of the agreement itself." Internatl. Assn. of Firefighters, Local 67 v. Columbus , 95 Ohio St.3d 101, 104, 766 N.E.2d 139 (2002). "Because a valid arbitrator's award draws its essence from the agreement, an arbitrator exceeds his powers when the award conflicts with the express terms of the agreement or cannot be derived rationally from the terms of the agreement." Summit Cty. Children Servs. Bd. v. Communication Workers of Am., Local 4546 , 113 Ohio St.3d 291, 2007-Ohio-1949, 865 N.E.2d 31, ¶ 13.
{¶ 18} The city contends that the arbitrator exceeded his powers under the agreement by adding a requirement that before an employee may be disciplined for insubordination, the employee must be advised that failure to comply with management's order may result in discipline. Specifically, the city argues that Article 42 of the agreement, regarding discipline, provides notice and an opportunity to be heard at a predisciplinary conference for any employee whenever management determines that an employee may be subject to discipline. Accordingly, the city argues that the requirement of a contemporaneous predisciplinary warning to an employee that the employee's failure to follow a directive may result in discipline adds an additional due process procedural requirement for discipline that is not found in the collective bargaining agreement. Thus, the city contends that the arbitrator's award "does not draw its essence from the parties' CBA, cannot be rationally derived from the CBA, and represents a contract of the arbitrator's own making, rather than an application of the CBA agreed to by the parties," and that the trial court should have therefore vacated the arbitrator's award. We disagree.
*195 {¶ 19} Despite the city's argument otherwise, the arbitrator concluded that the city had not proven a substantive element of the offense of insubordination; he did not add a procedural requirement to management's imposition of discipline under the collective bargaining agreement. The notice and opportunity to be heard provided to an employee under Article 42 of the agreement before that employee may be subject to discipline are procedural requirements; they are not relevant to whether the city proved the elements of insubordination to give it just cause to terminate Pierson's employment.
{¶ 20} The collective bargaining agreement between the city and the union does not define "insubordination" or "just cause," and accordingly, the arbitrator was required to give those terms their ordinary and plain meaning. Summit Cty. Children Servs. Bd. , 113 Ohio St.3d at 294, 2007-Ohio-1949, 865 N.E.2d 31. An arbitrator may properly look to industrial common law for guidance in interpreting an undefined phrase. Id. at 295, 2007-Ohio-1949, 865 N.E.2d 31.
{¶ 21} Labor arbitration decisions over many decades have defined the criteria to be used when evaluating whether discharge for insubordination meets the just cause standard. Indeed, the arbitrator in Gary, Indiana, Human Relations Comm. & AFSCME Council 62, Local 4009 , 04-2 ARB ¶ 3974 (July 8, 2004), specifically acknowledged the common law of arbitral decisions regarding the warning required to sustain a charge of insubordination. In that case, the grievant acknowledged that she had failed to comply with her supervisor's directive to lower her voice during a confrontational meeting with her supervisor. The arbitrator found that "[a]t first blush, it appears that the grievant did defy her supervisors and was accordingly insubordinate." However, the arbitrator ruled that there was no just cause for discharge because the grievant had not been warned that her failure to comply with her supervisor's orders would bring dismissal. The arbitrator stated:
As noted by arbitrators in Micro Precision Gear & Machine Corp . (31 Lab. Arb. 575, 579-580) and Standard Shade Roller Division (73 Lab. Arb. 86, 90) in 1958 and 1979 respectively, insubordination requires very clear instructions and warning of serious discipline. Both elements were absent in this case.
The above-cited cases are a part of the "common law" of just cause. The latter consists of the accumulated decisions of the arbitration profession rendered over the course of time on the basis of commonly accepted principles of right and wrong. It constitutes, so-to-speak, the rules of the arbitration game pertaining to just cause and, as such, guides decision making in disciplinary dispute resolution.
{¶ 22} Likewise, in Amsted Rail & United Steelworkers of Am., Local No. 1063 , 12-1 ARB ¶ 5470 (Jan. 4, 2012), the arbitrator adopted the common law of arbitral decisions requiring notice of the disciplinary consequences of failure to comply with an order before finding just cause to discharge for insubordination. Citing to Signal Delivery Serv. , 86 Lab. Arb. Rep. 75 (1985), wherein the arbitrator noted that forewarning "is the crux of the insubordination issue," the arbitrator stated, "[b]orrowing from other arbitrators, forewarning an employee of the effect of a refusal is a key indicator of the gravity of an employee's alleged offense."
{¶ 23} Similarly, in In re Consolidation Coal Co., Shoemaker Mine & United Mine Workers of Am., Dist. 6, Local 1473, 1981 Lab. Arb. LEXIS 207 (Sept. 22, 1981), the arbitrator stated that "arbitrators generally place three requirements on the company before upholding a discharge for insubordination." Id. at *21. "In order *196 to support a charge of insubordination, an employer must show that the instructions were clear; that they were understood to be an order; and that the supervisor stated the penalty for failure to comply." Id. at *20.
{¶ 24} It is apparent, therefore, that under well-established principles of arbitral jurisprudence, whether an employee received a warning of the consequences of his refusal to comply with a management directive is an element to be considered in determining whether there was just cause to discipline the employee for insubordination. Accordingly, the arbitrator's finding in this case that the elements of insubordination include a requirement that the employee be warned of the consequences of his or her refusal to comply was consistent with well-established arbitral precedent, and is not a basis for vacating the award.
{¶ 25} Despite the city's assertions otherwise, Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Emps. Assn., Local 11, AFSCME , 59 Ohio St.3d 177, 572 N.E.2d 71 (1991), and Hocking Technical College v. Hocking Technical College Edn. Assn. , 120 Ohio App.3d 155, 697 N.E.2d 249 (4th Dist. 1997), do not support its argument that the arbitrator's warning requirement imposes an additional requirement not found in the collective bargaining agreement on the city. In Ohio Office of Collective Bargaining , the collective bargaining agreement contained a provision that an employee's abuse of a patient was cause for discharge. Despite this provision and a finding that the employee had abused a patient, the arbitrator found no just cause for dismissal because the employer had not given the employee notice and due process before her termination. The Ohio Supreme Court sustained the vacation of the arbitrator's award, finding that a just cause analysis was not required under the agreement because abuse of a patient was per se cause for dismissal. The Supreme Court reasoned that the arbitrator's decision conflicted with the express terms of the agreement because it imposed requirements for terminating an employee who had abused a patient that were not expressly provided in the agreement.
{¶ 26} In Hocking Technical College , the collective bargaining agreement provided that an employee who accumulated seven unexcused absences in a year was subject to discharge for just cause. Despite a finding that the employee had accumulated enough absences for discharge, the arbitrator ruled that because the college had not warned the employee that her absences subjected her to possible discharge, there was no just cause for her termination. The Fourth District held that the trial court had properly vacated the arbitrator's award, finding that the arbitrator had exceeded his powers by adding a requirement for dismissal not found in the agreement.
{¶ 27} Dobbs, Inc. v. Local No. 614, Internatl. Brotherhood of Teamsters , 813 F.2d 85 (6th Cir. 1987), also relied upon by the city, is similarly unavailing. In Dobbs , despite a provision in the agreement that the employer could discharge an employee for three incidents of tardiness, the arbitrator reinstated the employee on the basis that the employer had not disciplined the employee after his second violation. The Sixth District upheld vacation of the award, finding that where the contract specifies that an employee may be discharged after a certain offense, if the offense has occurred, the arbitrator must uphold the discharge.
{¶ 28} In each of these cases, the collective bargaining agreements contained clauses providing that specific infractions were just cause for discharge, but the arbitrator ignored those clauses and imposed additional requirements to find a just cause termination. In this case, however, *197 there is no provision in the collective bargaining agreement that defines insubordination, and no provision requiring discharge when it occurs. Accordingly, the arbitrator was required to define the term and then decide if there was just cause for Pierson's discharge. The arbitrator did not disregard any provisions of the agreement, nor add any additional requirement to the agreement, by finding under well-established arbitral jurisprudence that one of the substantive elements of insubordination is a warning to the employee of the disciplinary consequences of his or her failure to comply with a management directive.
{¶ 29} Although, as the city points out, some arbitrators may conclude that forewarning of the consequences of failure to comply with a supervisor's order is not required because "insubordination is so serious that any employee in industrial society may properly be expected to know already that such conduct is heavily punishable,"In re Ent. Wire Co. , 1996 Lab. Arb. LEXIS 78 (Mar. 28, 1966), the arbitrator deciding this case employed a well-known and widely used definition of insubordination, developed from decades of arbitration decisions, that requires notice of the consequences of failing to follow the directive in order to find just cause for termination. We cannot say that the arbitrator exceeded his authority in doing so. Where parties to a collective bargaining agreement leave terms undefined, "they risk the arbitrator's looking 'outside the CBA for guidance in defining, interpreting, and applying that phrase.' " Summit Cty. Children Servs. Bd. , 113 Ohio St.3d 291 at 296, 2007-Ohio-1949, 865 N.E.2d 31, quoting Conoco, Inc. v. Oil, Chem. & Atomic Workers Internatl. Union , 26 F.Supp.2d 1310, 1317-1318 (N.D.Ok.1998). That is exactly what the arbitrator did here.
{¶ 30} The city and the union agreed that the issue for the arbitrator's decision was whether there was just cause for Pierson's discharge under the collective bargaining agreement. Without contractual provisions defining insubordination or just cause, or a provision providing that an employee's refusal to leave the workplace when instructed to do so is just cause for termination, the arbitrator was required to evaluate the elements of insubordination, and determine whether the city had just cause to discharge Pierson for insubordination. The arbitrator's decision vacating Pierson's termination because the city had not proven the alleged misconduct was consistent with the parties' contract and decades of arbitral jurisprudence. Thus, the trial court properly determined that the award drew its essence from the contract, and was not unlawful, arbitrary, or capricious. The city's assignment of error is therefore overruled.
{¶ 31} Judgment affirmed.
TIM McCORMACK, J., and MELODY J. STEWART, J., CONCUR

Pierson also filed a grievance regarding the attendance policy implemented by the city in July 2014. That issue was not submitted to the arbitrator to resolve and is not a subject of this appeal.